MARY D. CLARK, Respondent, *v.* WILLIAM R. POST et al., as Executors, etc., Appellants.

Where, upon sale of real estate by an assignee in bankruptcy, the notice and conditions of sale were attached together and signed by the parties, *held*, that they constituted a memorandum by which both were bound; and that prior negotiations and oral agreements were merged therein; also, that there was an implied warranty that the vendor had a good title, but that this warranty existed only so long as the contract remained executory, and as the terms of sale required a conveyance without warranty or personal covenant, but simply sufficient to pass whatever right the vendor had in the lands upon delivery of the deed, the covenant implied in the contract was discharged, and the grantor thereafter was only bound by whatever covenants there were in the deed.

The deed given by the assignee contained a recital of the various proceedings in bankruptcy which led to the appointment of the assignee; of the commencement of a suit by him as such assignee against S., wife of the bankrupt, who held the legal title of the real estate in question, to have such title adjudged invalid, and a conveyance of the premises to him in consideration of the discontinuance of such suit, "and other good and

valid considerations." *Held*, that this did not make a warranty, either express or by way of covenant, that the recitals were true, or permit a recovery as for a breach on proof that the narration was false, as it was not material to the contract contained in the deed or an inducement to it. *Peck* v. *Hensley* (20 Texas, 673) distinguished.

In an action brought by the purchaser against the executors of the assignee to recover back the purchase-money paid, the complaint alleged that at the time of the sale, before offering the premises, the assignee "stated that he had a good title to it," and could and would give a good title as against S.; that plaintiff bid off and paid for the property and accepted a deed thereof, relying upon that statement, and in consideration thereof, and upon the express understanding and condition that the assignee "would indemnify and protect her against any interest in or title to said premises which might thereafter be legally established and enforced" by S.; that S. subsequently brought an action of ejectment against plaintiff and the assignee, and, under judgment therein in her favor, recovered possession. There was no averment that the assignee acted fraudulently or with intent to deceive. On the trial plaintiff asked a witness as to the statements made by the assignee at the time of the sale; this was objected to on the ground that whatever statements were made, were merged in the written contract. The objection was overruled. *Held*, error.

Plaintiff was also permitted to show that he paid the purchase-price and accepted a deed under an agreement on the part of the assignee that he would hold the money until the claim of S. was decided. This was objected to on the ground that nothing of the kind was alleged in the complaint. No request to amend the complaint was made. The objection was overruled. *Held*, error. Also that, as without this evidence no cause of action was established, a refusal to dismiss the complaint was error.

A party must allege, as well as prove, the facts constituting his cause of action, and a recovery upon a cause of action, not alleged in the complaint, although proved under objection and exception on the trial, is not sustainable.

*Clark* v. *Post* (45 Hun, 265) reversed.

(Argued January 30, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 2, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and also affirmed an order denying a motion for a new trial; also appeal from an order of said General Term, made September 19, 1887, which affirmed an order of Special Term awarding costs to plaintiff.

The action was brought against the executors of James R. Huntting to recover back money alleged to have been paid to him upon a consideration which had failed.

The material facts are stated in the opinion.

*Hamilton Wallis* for appellants. In the absence of fraud the rights of the parties are to be measured solely by the writing. (*Johnson* v. *Oppenheim*, 55 N. Y. 295; *Mumford* v. *McPherson*, 1 Johns. 473; *Tallman* v. *Greene*, 3 Sandf. 441; *Thorp* v. *K. C. Co.*, 48 N. Y. 256; *Greene* v. *Collins*, 86 id. 254; *Eighmie* v. *Taylor*, 98 id. 298; *Corse* v. *Peck*, 102 id. 513; *Howes* v. *Baker*, 3 Johns. 510; *Houghtaling* v. *Lewis*, 10 id. 299; *Burwell* v. *Jackson*, 9 N. Y. 541; *Wilson* v. *Deane*, 74 id. 534; 2 Sharswood Black. 300, § 6; *Remington* v. *Palmer*, 62 N. Y. 31.) Proofs in a cause must follow the allegations contained in the pleadings. (*Rome Ex. Bk.* v. *Eames*, 1 Keyes, 592.) The complaint is required to state plainly and concisely the facts constituting a cause of action. The pleader may not aver a legal conclusion as an equivalent for the group of separate facts from which it is an inference. (*Schenck* v. *Naylor*, 2 Duer, 678; *Cooke* v. *Warren*, 88 N. Y. 40; *Austin* v. *Searing*, 4 id. 122; *Brown* v. *Colie*, 1 E. D. Smith, 265; *Adams* v. *Mayor, etc.*, 4 Duer, 306; *Sheridan* v. *Jackson*, 72 N. Y. 170; *Storrs* v. *Flint*, 46 N. Y. Super. Ct. 519.) The recitals contained in the deed from Huntting to Clark cannot support the judgment in this action. (*Wadsworth* v. *Payne*, 74 N. Y. 196.

*Jesse Johnson* for respondent. A statement of a relevant fact in a written agreement is a contract that the fact exists. (*Hawkins* v. *Pemberton*, 51 N. Y. 198; *Ledwich* v. *McKim*, 53 id. 307.) Plaintiff had a right under the contract of sale to insist upon a marketable title free from all reasonable doubt, but was induced by the defendant's promise to accept a doubtful title. (*Fleming* v. *Burnham*, 100 N. Y. 1; *Jordan* v. *Poillon*, 77 id. 521.) The promise being by parol, its precise meaning and effect were rightly left to the jury.

(*Power* v. *Barham*, 4 A. & E. 473; *Hawkins* v. *Pemberton*, 51 N. Y. 205, 206, 207; *Duffee* v. *Mason*, 8 Cow. 25.) The promise made by Huntting was not merged in the deed, but constituted an independent collateral contract, the breach of which is a valid cause of action and sustains the verdict. (*Remington* v. *Palmer*, 62 N. Y. 31, 33; *Murdock* v. *Gilchrist*, 52 id. 242; *Thayer* v. *Vilas*, 23 Vt. 494; 30 id. 482; *Buzzill* v. *Willard*, 44 id. 44; *Merrill* v. *Ramsey*, 34 id. 80.) A deed, given pursuant to a written contract does not supersede the written contract, but an action can be maintained on the covenant in the written contract. (*Bogart* v. *Burkhalter*, 1 Den. 125; *Chapin* v. *Dobson*, 78 N. Y. 74; *Grierson* v. *Mason*, 60 id. 394; *Smith* v. *Holbrook*, 82 id. 562; *Lindley* v. *Lacey*, 17 C. B. 578; *Erskine* v. *Adrian*, 8 Ch. App. 756; *Carr* v. *Dooley*, 119 Mass. 294; *People* v. *Baldwin*, 6 Cush. 550; *Brackett* v. *Evans*. 1 id. 79; *Unger* v. *Jacobs*, 7 Hun, 220.) Huntting's agreement to protect Mrs. Clark against Mrs. Buck's claim was executed and is not within the statute of frauds. (*Remington* v. *Palmer*, 62 N. Y. 34; *Carr* v. *Dooley*, 119 Mass. 294, 297; *Brackett* v. *Evans*, 1 Cush. 79; *Gilman* v. *McArdle*, 99 N. Y. 451.) Were the money paid by plaintiff to Huntting still in Huntting's possession, undistributed (apart from any warranty either in writing or by parol), the plaintiff could recover it *ex æquo et bono.* (*White* v. *Cont. Bk.*, 64 N. Y. 316; *Fitzpatrick* v. *Woodruff*, 96 id. 561; *Preston* v. *Fryer*, 3 Md. 221; *Hemsler* v. *Neckum*, 3 id. 270; *Hussey* v. *Toquemore*, 27 Ala. 288.) In oral contracts it is with the jury not only to ascertain what was said, but also to ascertain what was meant or intended, and what is the proper construction or interpretation of the words used. (*Bank* v. *Dana*, 79 N. Y. 108, 116; *Duffy* v. *Mason*, 8 Cow. 25; *Hawkins* v. *Pemberton*, 51 N. Y. 202.) Plaintiff was entitled to recover costs and disbursements. (2 R. S. [Edm. ed.] 92, § 41; *Horton* v. *Brown*, 29 Hun, 654; *Snyder* v. *Snyder*, 26 id. 324; *Rooney* v. *Lenmon*, 3 L. B. 101; *Field* v. *Field*, 77 N. Y. 294; *Wilkinson* v. *Littlewood*, 67 How. Pr. 474; *Bullock* v. *Bogardus*, 1 Den. 276; *Johnson* v. *Myers*, 103

N. Y. 666; *Daggett* v. *Mead*, 11 Abb. N. C. 116; *Cruik-shank* v. *Cruikshank*, 9 How. Pr. 350; *Harrison* v. *Ayres*, 18 Hun, 336; *Buckhout* v. *Hunt*, 16 How. Pr. 407; *Fort* v. *Gooding*, 9 Barb. 388; *Hyland* v. *Carpenter*, 20 W'kly Dig. 261; *Chesebro* v. *Hicks*, 66 How. Pr. 194; *Niblo* v. *Binsse*, 31 id. 476.) A recital in a written contract will be construed as a covenant or agreement that the recital is true even *when the contract related to real estate.* (*Peck* v. *Hensley*, 20 Tex. 673; *Douglass* v. *Hennessy*, 3 N. E. Rep. 525; 15 R. I. 272; *Green* v. *Collins*, 86 N. Y. 250, 251; *Sparrow* v. *Kingman*, 1 id. 246; 1 Parsons on Contracts [7th ed.] 624; *Henshaw* v. *Robins*, 9 Met. 83; *Hastings* v. *Lovering*, 2 Pick. 214; *Borrekins* v. *Bevan*, 3 Rawle, 23; *Cramer* v. *Bradshaw*, 10 John. 484; *Hawkins* v. *Pemberton*, 51 N. Y. 198.)

DANFORTH, J. It appears that William Buck and William Buck, Jr., became bankrupts, and on the 3d of July, 1877, Huntting was appointed their assignee. At that time, Sibyl T. Buck, wife of William, had the title to certain real estate in Sag Harbor, and, to facilitate a compromise then under consideration, conveyed it to Huntting, as assignee, by deed absolute in form, but upon parol condition that it should be void and of no effect if the proposed compromise fell through. It did fail. Afterwards (February 13, 1878), Huntting, as assignee, offered the real estate for sale at auction, upon certain terms, and among others (1st), that twenty-five per cent of the purchase-money should be paid down, and for which a "receipt would be given;" (2d), the residue to be paid July twenty-third, at the office of Carpenter, his attorney, when the deed "will be ready for delivery." Other conditions usual in such sales, but not now important, were imposed. The plaintiff, by her agent, bid for and became the purchaser of the premises at the price of $3,500, and signed the conditions of sale. Before offering the property, however, but at the time of the sale, the assignee stated that he had a good title to it, and could and would give a good title to the purchaser thereof, as against the bankrupts, and as

against Sibyl T. Buck. These facts are alleged in the complaint, and it is also stated that the plaintiff bid off and purchased the property and paid for it, and accepted a deed therefor, relying on that statement and in consideration thereof, and "upon the express understanding and condition that the said Huntting would indemnify and protect her against any interest in or title to said premises which might thereafter be legally established and enforced by the said Sibyl T. Buck, and not otherwise."

On the 21st of February, 1880, Sibyl brought an action against Huntting and this plaintiff and others to recover the premises, on the ground that the condition on which she had given the deed had happened, and so the consideration had wholly failed. During its pendency Huntting died, and his executors were substituted in his place as defendants. The suit was decided in favor of Sibyl, and it was adjudged that her title was good and that she was entitled to a reconveyance. The plaintiff (purchaser of the property) was therefore compelled to surrender possession to her. There was no suggestion or pretense that the testator acted fraudulently or with intent to deceive.

The defendants put in issue the making of the representations alleged in the complaint, but did not deny the other material allegations to which I have referred. Upon the trial the plaintiff was not called as a witness, but her husband, who acted as her agent in making the purchase, was called in her behalf and testified that at the sale he asked " What kind of a title the assignee proposed to give on that property ? " At that point defendants' counsel interrupted and said, " I object on the ground that, whatever his statements, they were merged in the written contract." The objection was overruled and an exception taken, and the witness continued : " He said they would give a title that would hold against William Buck, Mrs. Buck, William Buck, Jr., or any other Buck. Those were his words." After the sale a deed was prepared and delivered unsigned to the witness as agent for his wife, and he, having heard that a sale of other property by the assignee

was to be resisted by Mrs. Buck, examined the deed and objected to it on the ground that it did not contain proper covenants. He "could not see that it contained any warranty." He then saw Huntting; told him he didn't think he would take the deed; didn't feel it safe to do so, and thought he would throw it all up. Huntting said he hoped he wouldn't do that. The witness, after objection, continued: "I told him that I thought I would not take the title; that I had fully decided not to take it. Mr. Huntting said that he hoped I wouldn't refuse to take the deed, for to sell it over again would injure the sale of it very much, and he hoped that I would take it. *Well, I told him then that if he would agree to hold the money that I had paid in the interest of my wife for that property until her 'pretended claim,' as he called it, was decided, that I would take the deed. Mr. Huntting I was very well acquainted with, and supposed it would be all right. He said that he would do so. He said that he would do so to protect me, and also to protect himself, and I told him if he would do that I would take the deed in the interest of my wife."*

The defendants' counsel asked to have so much of the testimony of this witness as is italicised stricken out, on the ground that there is no allegation of anything of the kind in the complaint. The request was denied and an exception taken. "Afterwards," the witness says, "I paid the balance of the money and took the deed." The defendants gave evidence controverting the statements of plaintiff's witnesses as to representations at the time of the sale. The jury, however, in answer to specific questions put to them by the court, adopted the plaintiff's version, and concerning the conversations stated by witness Clark to have occurred after the sale and before he accepted the deed, found that they did occur. The appellants' contention was that the evidence was insufficient in any view to justify a recovery. He asked for a nonsuit and his request was denied.

*First.* The notice of sale and the conditions of sale were attached together and signed by the parties. They consti-

tuted a memorandum of what each was to do, and by it both were bound. In it, as in other contracts for the sale of land, there was an implied warranty by the vendor that he had a good title. This warranty, however, existed only so long as the contract remained executory, and there was no other obligation than to give a conveyance without warranty or personal covenant, but sufficient to pass whatever right the vendor had in the lands to the purchaser. When the deed was given the covenant actually implied into the contract was discharged, and the covenants in the deed, if any, took effect. In like manner the conversation between the parties, and the words which passed between them before the conditions of sale were signed, merged in that paper. These results follow from the general principle that all negotiations between the parties prior to or contemporaneous with the execution of a deed are merged in it. The deed given by the assignee contains no warranty. The learned counsel for the respondent admits that it contains no formal warranty, but he finds in the recital a statement of facts which he says are untrue, and regards them as equivalent to an agreement. It is plain it was not intended by the vendor to be a warranty; nor was it understood by the vendee to be such. The deed was objected to because it was lacking in that respect. But what is more to the purpose than the understanding of the parties, the words used do not make a warranty, either expressly or by way of a convenant, that the grantor was either the owner of the premises or had any special interest therein. The recital exhibits the various proceedings in bankruptcy which led to the appointment of the assignee, his efforts as such to assail by suit the title of Sibyl to the real estate claimed by her; its conveyance to him as assignee in consideration of the discontinuance of the suit, and other good and valid considerations "therein expressed," and describes the place and time of the record of that deed. These facts form links in the official proceedings of the assignee and facilitate inquiry by the purchaser, but they were not material to the contract which the deed contains, nor an inducement to it.

As the sole object of the deed was to convey such title as the assignee in bankruptcy had acquired, there is no reason to suppose the recitals were intended to be more than a narrative leading up to that title. There is no rule of construction which will enable a court to regard it as equivalent to a covenant that the circumstances narrated were true, or permit an action as for a breach, if the narration should prove to be false. "A recital is the setting down or report of something done before." (Shepard's Touchstone, chap. 5, Exposition of Deeds, 76, § 3.) In *Bath* v. *Monlaysee* (Cases in Chancery, 3d part, 101), Chief Justice HOLT says: "The reciting part of a deed is not at all a necessary part either in law or equity. It may be made use of to explain a doubt of the intention and meaning of the parties, but it hath no effect or operation."

I have examined the cases referred to by the learned counsel for the respondent, and, so far as they relate to recitals in a deed disposing of real estate, find nothing to alter the construction required by the authorities I have cited, nor do I find anywhere that the recital by itself has been held to amount to a covenant. In one of those referred to by the respondent (*Peck* v. *Hensley*, 20 Texas, 673), there was a recital of the chain of title, followed by a covenant " to warrant and defend " the grantor's title, etc., and the court held that the intention manifested by the context was to covenant that they had the right to convey the land. There was no covenant in the case before us, nor is there anything to indicate that one was within the intention of the parties. If it should even be conceded that the grantor would be estopped by the recital, it would by no means follow that he would be bound by its averments as a covenant, either express or implied. The opposite doctrine has been justly characterized as a dangerous one (Rawle on Covenants for Title [5th ed.] 280), and as one likely to entrap parties "into covenants which they never thought of and to which they were never asked to yield their assent." (*Whitehill* v. *Gotwalt*, 3 P. & W. [Penn.] 313-324.) It would be strange, indeed, if such implication should be allowed

where, as in the case at bar, the grantor's covenant was asked for but refused. The recital, in fact, shows the official action of the grantor and has no other object or purpose whatsoever. It does not even amount to a direct affirmation, but were it otherwise, it expresses no covenant, and under the statute of alienation by deed (1 R. S. 738 § 140) none could be implied into the conveyance. Further discussion 'upon this point is needless, for the action proceeded upon no such ground as that now taken by the plaintiff, nor was it founded upon the deed, but upon matters wholly external to it.

Although requested by the plaintiff to hold, as matter of law, that the recitals entitled the plaintiff to a verdict, the learned trial judge declined to do so, and, notwithstanding the defendants' request for instructions to the jury in regard to them, he declined, saying he expressed no opinion as to whether there was evidence in the case that the recitals were not true. The case, from the beginning to end, from the complaint to the submission of the case to the jury, rested upon oral statements, and a breach of those statements constituted the sole cause of action.

*Second.* Parties may doubtless enter into covenants collateral to the deed. (*Houghtaling* v. *Lewis*, 10 Johns. 297; *Erskine* v. *Adeane*, L. R., 8 Ch. App. 756; *Morgan* v. *Griffith*, L. R., 6 Exch. 70.) The difficulty is to determine when an agreement occupies that position. The respondent claims that the agreement which the jury found in the case before us was of that character, viz., that "Huntting promised to protect the plaintiff if said deed was accepted, and to hold the purchase-money for the benefit of the parties who should be entitled to it, until the claim of Mrs. Buck against the property was decided, and to refund said purchase-money in case he, the said Huntting, proved to have no title." The learned trial judge allowed the verdict to stand on that ground only. It is not necessary that we should determine its effect in relation to the deed, or whether it was collateral to it and sufficient upon default to sustain an action, for no such agreement was alleged in the pleadings, or properly before the court.

The evidence relied upon to sustain the finding I have set out above. It should, I think, have been stricken out as desired by the defendants' counsel. If it tended to establish a contract, it was one not within the issue, and without that evidence the plaintiff had no shadow even of a case. The objection cannot, with proper respect to the rights of the parties, be disregarded. One party to the supposed agreement, the defendants' testator, is dead. His estate is put in peril by the survivor, upon the testimony of her husband, who was in all these matters her agent, and who, by the death of his interlocutor, is made safe from contradiction. The propriety of holding the living party to the observance of strict rules of practice is made apparent by the papers which form part of the record. After the death of Huntting, on presenting her claim to his executors, the plaintiff described it under oath as for the " sum of thirty-five hundred dollars had and received of Mary D. Clark, and paid by her to him, July 31, 1878, for a house and lot situated in Sag Harbor, which the said Huntting claimed and represented to her he had the power and right to sell and convey to her as assignee in bankruptcy of William Buck and William Buck, Jr., and which she paid said Huntting, relying on the truth of his said representation, when said Huntting had no authority to sell said land, and knew all the facts as to his want of authority, and she had no knowledge of them." The difference between the two claims is too well defined not to be observable, and it would be unfair to bind the defendants by a case which, however proved, was neither called to their attention before the surrogate, nor by the complaint which followed their refusal to refer the claim actually presented. A party must recover not only by his proof, but upon his allegations. The facts stated must constitute a cause of action and they must be in evidence. It is not enough that they stand upon proof, unless that proof is preceded by statement. The motion to strike out the evidence because not within the issue, was distinctly presented, and no application to amend, or for other relief, was made by the

plaintiff. Not only was there error in refusing to grant that motion, but the request of the defendants that the complaint be dismissed, should have been granted, for, without that evidence the plaintiff's case, however viewed, had no foundation.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.