PETERS v. McLAREN et al.

(Circuit Court of Appeals, Sixth Circuit.  October 10, 1914.)

No. 2636.

1. TRUSTS (§ 41*)—SUIT TO ESTABLISH—BURDEN AND MEASURE OF PROOF.

The burden rests on one asserting that a trust was created by a deed, either express or implied, to prove its existence by clear and satisfactory evidence.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 60; Dec. Dig. § 41.*]

2. DEEDS (§ 25*)—QUITCLAIM—EFFECT AS CONVEYANCE.

A quitclaim deed is as effective to convey whatever title or interest the grantor had in the property as a deed in the form of a grant, bargain, and sale.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 49; Dec. Dig. § 25.*]

3. DEEDS (§ 95*)—CONSTRUCTION—EFFECT OF PREAMBLE.

If the dispositive or operative portions of a deed are ambiguous and difficult of interpretation, resort may be had to a preamble to show the intention of the grantor, but not to create a doubt or uncertainty which otherwise does not exist, for if the deed exclusive of the preamble, is clear and unambiguous, the preamble does not control.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 238, 241–254; Dec. Dig. § 95.*]

4. EVIDENCE (§ 419*)—EXTRINSIC EVIDENCE.

The preamble to a deed is explanatory of the reasons for the making of the deed, but not necessarily of all of them; and if there were reasons and considerations for its execution other than those expressed in the preamble, the party whose interest requires proof of the same may, under proper circumstances, show what they are.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. § 419.*]

5. DEEDS (§ 93*)—CONSTRUCTION.

A court of equity looks at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, their intention will be gathered from the whole instrument.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232; Dec. Dig. § 93.*]

6. EVIDENCE (§ 448*)—EXTRINSIC EVIDENCE.

If the intention of the parties to a deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed; but, if there is an element of uncertainty, parol evidence, the admissions of the parties, and other extraneous circumstances may be proved to ascertain its true meaning.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 448.*]

7. DEEDS (§ 93*)—CONSTRUCTION—RULES GOVERNING—INTENTION OF PARTIES.

When the intention is manifest, it will control in the construction of a deed, without regard to technical rules of construction.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232; Dec. Dig. § 93.*]

8. PARTNERSHIP (§ 183*)—TRUSTS (§ 25*)—INSOLVENCY—CONVEYANCE OF INTEREST BY ONE PARTNER TO ANOTHER—CONSTRUCTION OF DEED.

An insolvent partnership made an assignment for the benefit of its creditors. One of the partners was in poor health, unable to attend to business, and died soon afterwards. He had a personal estate, large life insurance, the greater part of which under the statute of the state could be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

reached by creditors, and the partnership had also given to his wife a preferential mortgage of doubtful validity. He desired to protect himself and his estate in such matters as far as possible, and it was apparent that the property of the partnership, if sold, would pay but a small percentage of the indebtedness. In such circumstances he executed a quitclaim deed to all of the property, assets, and good will of the firm to his partner, conditioned that the latter should obtain the consent of not less than 87 per cent. of the creditors to a composition, and carry out such composition; otherwise, the deed to be void at the grantor's election. The partner effected and carried out the composition and the deed was recorded. *Held*, that its effect was to end the partnership and to convey absolutely and without any resulting trust all of the grantor's interest in the partnership property.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 312, 319–336, 348; Dec. Dig. § 183;* Trusts, Cent. Dig. §§ 34–37; Dec. Dig. § 25.*]

**9. EVIDENCE (§ 419*)—PROOF OF CONSIDERATION.**

The real consideration for a deed, although different from the nominal consideration expressed, may be shown, if it is not inconsistent with that named.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. § 419.*]

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by Caroline L. Peters, as administratrix de bonis non with the will annexed of the estate of George M. Peters, deceased, against Daniel McLaren, receiver of the Columbus Buggy Company, Valentine & Co., and the Columbus Buggy Company. Decree for defendants, and complainant appeals. Affirmed.

D. F. Pugh and L. R. Pugh, both of Columbus, Ohio, for appellant. J. E. Todd and A. T. Seymour, both of Columbus, Ohio, for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and TUTTLE, District Judge.

PER CURIAM. At the suit of Valentine & Co. against the Columbus Buggy Company, Daniel McLaren was appointed receiver of the Columbus Buggy Company, and appellant by intervention sought to recover the property in the hands of the receiver, claiming that such property was a trust fund belonging to appellant because of a partnership contract between appellant's testator and one Clinton D. Firestone, and because of the particular manner in which certain of the partnership property passed to the Columbus Buggy Company, a corporation in which Firestone was the controlling stockholder. Two grounds of defense were urged: (1) That the trust claimed by appellant did not exist; and (2) that in any event appellant through her own conduct was estopped from making such claim. In the District Court Judge Sater sustained the appellees on both defenses. We approve of those portions of Judge Sater's opinion which are printed below.

The decree is affirmed, with costs.

SATER, District Judge. On June 29, 1882, George M. Peters (hereinafter designated as Peters), Oscar G. Peters, and Clinton D. Firestone (hereinafter

called Firestone), entered into articles of copartnership to conduct the business of manufacturing and selling carriages, buggies, and dashes under the name of the Columbus Buggy Company and Peters Dash Company of Columbus, Ohio. * * * On November 9, 1894, Oscar G. Peters died. His interest was withdrawn from the business, and his estate settled but not wholly released from the partnership debts. The articles of copartnership, as originally drawn, remained in force excepting in so far as affected by his death. The extinguishment of his interest left Firestone and Peters as equal partners in and owners of the business. On August 1, 1896, * * * the partnership made an assignment under the (Ohio) state statute in trust for the benefit of its creditors. * * * Its liabilities at that time were about $1,250,000. Prior to the execution and filing of the deed of assignment the partnership * * * gave certain preferences, one of which was, at Peters' instance, in the form of a chattel mortgage for thirty or more thousand dollars, to Mrs. Peters on property in Kansas City, Mo. * * * Peters had an individual estate outside of his partnership belongings. He also had life insurance of some importance, the amount of which was from $60,000 to $75,000. A composition with creditors was suggested, at their first meeting, which was held * * * in October or November, 1896. Peters had become seriously ill, and on his account the meeting had been deferred. He was, however, present, although a very sick man. A creditors' committee was appointed to work out a composition. A preliminary meeting of the committee was held, at which Peters and all others present were of the opinion that if the partnership estate was converted into money it would yield but a small dividend to the creditors, that some arrangement ought to be made to continue the business, and that Firestone should get his resources together and make some sort of a proposition with that end in view. Peters' health was such that he was at the office and around but a few days only after such meeting. Firestone and the creditors' committee agreed upon a composition proposal, after which he devoted himself almost exclusively to its accomplishment until it was finally wrought out. Both Peters and the creditors looked to Firestone to bring about that result. Peters desired to protect his individual estate, his life insurance, and his wife's preferential mortgage. * * * To effectuate the settlement and accomplish the desire of creditors and of both Peters and Firestone, Peters on December 16, 1896, executed and delivered to Firestone the quitclaim deed whose import is the subject of this controversy. As it embodied agreements as to certain matters to be done by each of the parties, it was executed and acknowledged by both grantor and grantee. The preparation and consideration of the deed extended through some weeks. * * * The deed was executed at the Peters residence, he then being confined to his bed. * * * The deed was fully read to Peters and its purport explained to him, although he had prior knowledge of it and its contents, and on two or three occasions he interrupted the reading to ask an explanation as to the legal effect of certain provisions, his counsel responding to his inquiries. * * *

The following is a copy of the instrument in question omitting the acknowledgment:

"Whereas, on the first day of August, 1896, George M. Peters and Clinton D. Firestone, partners as the Columbus Buggy Company and Peters Dash Company, made, executed, and delivered a certain deed of assignment, and thereby transferred and conveyed to William A. Miles and John M. Thomas, their successors and assigns forever, in trust for the benefit of all creditors, all the real and personal property and assets of the said partnership, wherever the same might be situated or located, which said deed of assignment was duly filed on said day in the probate court of Franklin county, Ohio, as will more fully appear, reference being had to said deed and the records of said court, and which said assignment so made is now pending in said probate court of Franklin county, Ohio; and

"Whereas, it is desirable that a proposition to compromise, settle, and liquidate the debts and obligations of said partnership and the claims and demands against said assigned estate should be made by one or both of said partners; and,

"Whereas, for the purpose of enabling Clinton D. Firestone to make an offer of compromise, liquidation, and settlement to the creditors of said part-

nership, the said George M. Peters is ready and willing to relinquish all his right, title, estate, and interest in said partnership property and assets and in the business of said partnership, including the good will thereof and all the estate, right, title, and interest reserved to him in said deed of assignment:

"Now, these presents witnesseth: That I, George M. Peters, of Columbus, Ohio, in consideration of one dollar ($1.00) to me paid by Clinton D. Firestone, the receipt of which is hereby acknowledged, and in consideration of the covenants, agreements, and conditions hereinafter contained and set forth to be kept, observed, and performed by the said Clinton D. Firestone, have covenanted and agreed to, and do hereby, remise, release, relinquish, and forever quitclaim to the said Clinton D. Firestone, his heirs and assigns forever, all my right, title, estate, interest, claim, and demand of, in, and to all and singular the lands, tenements, appurtenances, fixtures, machinery, goods, chattels stock, wares, merchandise, patents, tools, appliances, apparatus, patterns, franchises, leases, promissory notes, credits, choses in action, evidences of debt, claims, and demands, and all the real and personal property and assets of said partnership, including the right to use said partnership name, and the good will of said business, of whatsoever kind or description, and wheresoever the same may be situated or located. To have and to hold unto the said Clinton D. Firestone, his heirs and assigns forever, each and every item, piece, and parcel of said above-mentioned property, with all the privileges and appurtenances thereof or thereunto belonging, provided, nevertheless, and these presents are upon this express condition: That the said C. D. Firestone has agreed and does hereby agree to use his best efforts and to endeavor to obtain the assent and acceptance of the offer of compromise, settlement, and liquidation so to be made by him, by each and all of the creditors of the said partnership. Now, if the said Clinton D. Firestone shall not obtain the assent or acceptance of said offer of compromise and settlement by eighty-seven (87%) per cent. of all the creditors of said partnership in amount, then this release, transfer, quitclaim, and instrument shall be void, if the said George M. Peters, or his executors or administrators so elect; otherwise, to be and remain in full force and virtue in law forever.

"It is expressly understood and agreed by and between the said George M. Peters and Clinton D. Firestone that each of them shall be and remain liable to the other for his proportionate part of any debt now existing against them as partners, or any judgment that may be rendered against either by any court of competent jurisdiction upon any debt now existing against them as partners, and shall be liable each to the other for their proportionate part of any attorney's fees or court costs incurred in defending any suit that may be brought or any debt or obligation now existing against them as partners. And on any such debt or claim it is mutually agreed that neither shall have the right to confess judgment without the consent of the other, and each of them hereby agrees to use all reasonable efforts to notify the other of any and all suits that may be brought and to defend the same so far as a legal defense thereto may exist.

"And the said C. D. Firestone does further stipulate and agree for himself and for the officers and employés of any new firm or company, into whose possession the books and papers heretofore used by the said partnership may go, so far as his control and influence can require, that the said George M. Peters, his executors or administrators, shall have his and their earnest co-operation and assistance in any litigation against the said George M. Peters or his estate arising out of said partnership, and it is expressly understood that this provision shall be held to include reasonable time, help, and assistance which the said George M. Peters or his attorneys, executors, and administrators may desire or need in the production, inspection, or explanation of the books and papers of said partnership.

"In witness whereof, the said George M. Peters and Clinton D. Firestone have hereunto set their hands this sixteenth day of December, 1896.

"George M. Peters,
"Clinton D. Firestone."

After the instrument was executed it was duly filed in the recorder's office of Franklin county, Ohio, on July 17, 1897. Peters died on January

17, 1897. * * * Two administrators with the will annexed were appointed, Mrs. Peters being named in the will as the sole beneficiary. * * * The composition which Firestone offered to the creditors was 25 per cent. in cash or 35 per cent. in notes. Some were unwilling to accept his offer. It was found that there was some indebtedness on which the estate of Oscar G. Peters was still liable. * * * To bring about the composition the Oscar G. Peters estate deposited * * * about $10,000 and Mrs. Peters about $27,000, to be applied on certain creditors' claims to get them out of the way, so that they would not fall back on the two Peters estates. The two Kansas City banks with whom the assignors had transacted business were embittered by the preference given to Mrs. Peters, and sharply assailed her mortgage as a fraudulent conveyance and without consideration. Her attorneys concluded, or at least feared, that there was a failure of consideration as to some of the notes secured by the mortgage, and that it was tainted with fraud and might fall as an entirety. Negotiations resulted, the outcome of which was that the banks agreed to accept 35 per cent. offered by Firestone, but exacted that Mrs. Peters should pay an additional 35 per cent., and to this she assented. * * * The composition was effected, and neither of the Peters estates was ever called upon to pay any of the partnership debts. After it was consummated, for the purpose of lifting the assignment, an order was prepared and filed on July 17, 1897, in the probate court in the matter of the partnership assignment, which order was approved by the assignees, the administrators of the Peters estate, * * * Firestone, (Chas. E.) Morris, and the State Savings Bank & Trust Company. The order recites, inter alia, the making and filing for record of the deed from Peters to Firestone, the compliance of Firestone with the conditions therein made, and that he "has settled with the requisite number of creditors to make said deed absolute; that said deed has become absolute, and the estate conveyed thereby indefeasible;" the appointment of the administrators, the ownership by the State Savings Bank & Trust Company or by Chas. E. Morris of all the claims due and owing by the partnership which had been presented to the assignees for allowance, excepting such as were secured by mortgage or otherwise; and the desire of all parties appearing and of all creditors secured and preferred that the assignment should be discontinued and vacated and the property and assets of the assignor be transferred, conveyed, and delivered to Firestone. It was therefore ordered that the assignees execute and deliver to Firestone a deed or conveyance for all of the real estate conveyed to them, and also execute and deliver to him an assignment, transfer, and conveyance of all of the other property of the assigned estate in their possession and that they make due return of their proceeding. Thereupon the assignees complied with the order so made, and on July 20, 1897, their action in so doing was confirmed by the court. * * *

On July 19, 1898, the administrators filed their first and final account. On September 13th following, it was confirmed, the estate settled, and they and their bondsmen discharged. After the conveyance was made to Firestone by the assignee, he took possession of all the property and effects of the Columbus Buggy Company and Peters Dash Company and commenced to operate the business. He soon thereafter sold the Dash business. In the year 1900 the Columbus Buggy Company of New Jersey was duly organized and incorporated under the laws of that state. That corporation purchased from Firestone, and he conveyed to it by deed of general warranty, for the named consideration of $377,475, all of the real estate owned by him which was used and had been used by him and the partnership in the manufacturing business, subject, however, to a mortgage indebtedness of $126,000, with accrued interest and the unpaid taxes and assessments, all of which liens the corporation assumed and agreed to pay. The deed recites that Peters conveyed all of his interest in the partnership property to Firestone by deed dated December 16, 1896. Firestone also executed and delivered to the corporation a bill of sale for all of the property other than the real estate which was used in connection with and arose out of the business which he was then and had been conducting. The consideration paid for all of the property transferred by him to the corporation was $1, 1,000 shares of 7 per cent. preferred stock, and 6,990 shares of common stock, all of the face value of $100 per share.

Ten additional shares were outstanding, 8 of which were held by Charles E. Firestone. King and Parker each held one share, Parker's subsequently being transferred to Firestone. On October 18, 1902, the corporation conveyed a part of the North High real estate for the sum of $125,000, subject to a $40,000 mortgage, taxes, and assessments, to the Mercantile Building Company.

In January, 1904, the Columbus Buggy Company of Ohio was duly organized and incorporated, and purchased all of the property of the New Jersey corporation of whatever kind, including the Dublin avenue real estate, on which the factory buildings are located, and which was purchased in 1898 or 1899. The property was taken subject to the outstanding mortgages and other liens; the purchaser also assuming and agreeing to pay all of the indebtedness of the New Jersey corporation. The consideration named in the deed for the real estate was $338,000. The total consideration for all of the property transferred was $700,000, which was paid by the delivery to such persons as the New Jersey corporation should designate of 6,000 shares of common stock and 1,000 shares of preferred stock, all of the face value of $100 per share. Of the several holders of common stock are Firestone, over 5,200 shares, Joseph F. Firestone, about 500 shares, and Oliver H. Perry, 51 shares. Preferred stock to the amount of about $132,000 was sold to various purchasers for cash at $100 per share and is still outstanding. Substantially all of these sales were made in 1904. On February 27th of that year, the Buggy Company sold ° ° ° the residue of the property which had been owned by the partnership, lying north of Chestnut street, for the sum of $130,000. ° * °

In November, 1902, the Mercantile Building Company filed a suit in the court of common pleas of Franklin county, Ohio, against Caroline L. Peters, to quiet title to the premises which it had purchased as above mentioned, alleging that she asserted an interest in a portion of such real estate adverse to it, as it was informed, in the nature of a dower interest. She answered, claiming a dower interest, and asked that it be assigned to her, and for other equitable relief. On or about November 30, 1906, she commenced an action in the Franklin county court against Firestone. ° ° ° He answered, and on the evidence and agreed statement of facts Judge Bigger held on December 1, 1906, that the deed in question was a deed of trust, and that Firestone should account, and ordered the evidence to be taken and reported to the court. An appeal was prosecuted to the state circuit court and dismissed, for the reason that the order of the common pleas court was not final. The case stands on a reference. After the receiver was appointed in this court for the Columbus Buggy Company, the bulk of its property was sold on May 14, 1913, to a creditors' committee for $310,000. It is thought that perhaps $40,000 additional will be realized. The debts aggregated about $660,000. ° ° ° On May 31, 1913, Mrs. Peters, as administratrix de bonis non with the will annexed, intervened, asking that no distribution of the assets of the defendant company be made until her rights are determined, asserting that the property to the extent of her interest in the George M. Peters estate was held in trust, and praying that a trust be declared and an accounting be ordered. To this the receiver answered. ° ° ° Mrs. Peters did not keep track of the business of the Columbus Buggy Company, but knew that it was operating, and that its stock was listed on the market and offered for sale to raise money. ° ° ° She gave the matter no consideration, because she was not interested in it. After Firestone solicited a quitclaim deed from her for the Mercantile Building Company, which desired to borrow money on its property, she "decided to make some investigation," and ° * ° has since continually been represented by counsel, who knew of the corporate character of the Buggy Company. ° ° ° The New Jersey and Ohio corporations above mentioned caused their respective deeds to be recorded with becoming promptness in Franklin county, Ohio, and made the annual reports required by law to the proper state officers. Purchasers for the preferred stock of the Ohio corporation were solicited by publication in the local press and by a widely distributed circular to all parties with whom the company was dealing, some of whom are now its creditors. That such stock was on the market was communicated to ° ° ° commercial agencies and was the subject of comment in trade journals. The sales made were actual. ° ° °

[1] The primary question for decision is: Did the deed from Peters to Fire-

stone create a trust? It is not charged that there was fraud in securing it or the order of the probate court. * * * If there be a trust, either express or implied, the burden is on the intervener to prove its existence by clear and satisfactory evidence. Shepard v. Pratt, 32 Iowa, 296; 13 Ency. Ev. 115; McKeown v. McKeown, 33 N. J. Eq. 384; Parker v. Snyder, 31 N. J. Eq. 164; Stall v. Cincinnati, 16 Ohio St. 170; Ryan v. O'Connor, 41 Ohio St. 368, 372; Russell v. Bruer, 64 Ohio St. 1, .5, 59 N. E. 740. If the case be a doubtful one, the deed will be construed in favor of the grantee (Bender v. Fromberger, 4 Dall. [Pa.] 436, 440, 1 L. Ed. 898), and most strongly against the grantor (Potter v. Burton, 15 Ohio, 196, 199; 4 Ency. Dig. Ohio Rep. 798).

[2] A valid argument cannot be based on the fact that the deed does not recite a grant, bargain, and sale, but merely remises, releases, relinquishes, and forever quitclaims the property therein described. A deed in the form of the one under consideration is as effectual to divest and transfer a complete title as any other form of conveyance. In Moelle v. Sherwood, 148 U. S. 21, 29, 13 Sup. Ct. 426, 429 (37 L. Ed. 350), Mr. Justice Field said: "There is in this country no difference in their efficiency and operative force between conveyances in the form of release and quitclaim and those in the form of grant, bargain, and sale. If the grantor in either case at the time of the execution of his deed possesses any claim to or interest in the property, it passes to the grantee. In the one case, that of bargain and sale, he impliedly asserts the possession of a claim to or interest in the property, for it is the property itself which he sells and undertakes to convey. In the other case, that of quitclaim, the grantor affirms nothing as to the ownership and undertakes only a release of any claim to or interest in the premises which he may possess without asserting the ownership of either." See, also, U. S. v. California, etc., Land Co., 148 U. S. 31, 46, 13 Sup. Ct. 458, 37 L. Ed. 354; McDonald v. Belding, 145 U. S. 492, 12 Sup. Ct. 892, 36 L. Ed. 788; Van Rensselaer v. Kearney, 11 How. 297, 322, 13 L. Ed. 703; Hall's Lessee v. Ashby, 9 Ohio, 96, 34 Am. Dec. 424; Garlick v. Railway Co., 67 Ohio St. 223, 65 N. E. 896; Devlin on Deeds (3d Ed.) § 27; 7 Words and Phrases Judic. Def. 6076; 13 Cyc. 524, 525, 652; Boynton v. Haggart, 120 Fed. 819, 823, 57 C. C. A. 301.

[3, 4] The deed has a preamble or introductory portion. 22 Am. & Eng. Ency. Law, 1161. Mrs. Peters seeks the intention of the parties to the deed mainly in its preamble; the receiver looks mainly to the body of the deed, and sees no inconsistency therewith in the preamble. The same rule must obtain in the treatment of the preamble to a deed, which is but a contract (Wierengo v. Insurance Co., 98 Mich. 621, 627, 57 N. W. 833), as to the preamble of a statute. The preamble is explanatory of the reasons for the making of the deed, but not necessarily of all of them. It is declaratory of the intention of the parties, but not necessarily of all of their intentions. If the dispositive or operative portions of the deed are ambiguous and difficult of interpretation, resort may be had to the preamble to show the intention of the grantor, but not to create a doubt or uncertainty which otherwise does not exist, for if the deed, exclusive of the preamble, be clear and unambiguous, the preamble does not control. Walsh v. Trevanion, 15 Q. B. 733, 751; Bailey v. Lloyd, 5 Russ. 330, 344; Townsend v. State, 147 Ind. 624, 636, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. Rep. 477, 485; Coverdale v. Edwards, 155 Ind. 374, 382, 58 N. E. 495; Lloyd v. Urison, 2 N. J. Law, 212, 224, 225; James v. Dubois, 16 N. J. Law, 285, 294; Jones, Real Property, §§ 246, 249, 250; Abbott's Law Dict.; Bouvier's Law Dict. If there were reasons and considerations for the execution of the deed other than those expressed in the preamble, the party whose interest requires proof of the same may, under proper circumstances, show what they were. Lloyd v. Urison, 2 N. J. Law, 226; Bouvier's Law Dict.; Steele v. Worthington, 2 Ohio, 182.

[5, 6] A court of equity looks at the real object of a deed and the intention of the parties and will compel the fulfillment of both. Hughes v. Edwards, 9 Wheat. 489, 494, 6 L. Ed. 142. If possible, their intention will be gathered from the whole instrument. Martin v. Jones, 62 Ohio St. 519, 525, 57 N. E. 238; Williams v. Paine, 169 U. S. 55, 76, 18 Sup. Ct. 279, 42 L. Ed. 658. If their intention is plain, parol evidence is not admissible to prove an intention different from the terms of the deed. Lessee of Barton v. Heirs of Morris, 15 Ohio, 408, 424; Hubbird v. Goin, 137 Fed. 822, 70 C. C. A. 320 (C. C. A.

8). But when a deed possesses an element of uncertainty, parol evidence, the admissions of the parties, and other extraneous circumstances, may be proved to ascertain its true meaning. McAfferty v. Conover, 7 Ohio St. 99, 104, 70 Am. Dec. 57; Reed v. Proprietors, etc., 8 How. 274, 288, 289, 12 L. Ed. 1077; Gill v. Fletcher, 74 Ohio St. 295, 304, 78 N. E. 433, 113 Am. St. Rep. 962. * * *

[7] The issues tendered as to the intentions of the parties, the considerations for the deed and estoppel, make the case a proper one for the admission of parol evidence to show the intent and all of the intent of the parties, and the part played, the conduct, and the acts performed by Mrs. Peters, both before and after the execution of the deed. The whole and actual consideration for the conveyance may also be shown, so long as it does not contradict, or change the effect or legal operation of, the deed. The court may therefore plant itself in the place of the grantor for the purpose of discovering his intention, and 'then, in view of all the facts and circumstances surrounding him at the time of the execution of the instrument, consider how the terms of the deed may affect the subject-matter. When the intention is manifest, it will control in the construction of the deed without regard to technical rules of construction. Prentice v. Duluth Storage & Forwarding Co., 58 Fed. 437, 443, 7 C. C. A. 293 (C. C. A. 8); Atkinson v. Baden, 1 Ohio Cir. Ct. R. 537, 540; Kirby v. Brownlee, 13 Ohio Cir. Ct. R. 86, 89 (affirmed Kirby v. Bowdle, 55 Ohio St. 676, 48 N. E. 1114, without report); Gunn v. Black, 60 Fed. 151, 158, 8 C. C. A. 534 (C. C. A. 8); Brown v. Cranberry Iron & Coal Co., 59 Fed. (C. C.) 434, 438. * * *

[8] In the light of the surrounding circumstances, the conclusion to be reached is plain. Peters shared with the creditors and others concerned the belief that the assigned property, if sold, would pay but a small percentage of the partnership debts. His individual estate would then be called upon to respond. Under the Ohio statute, the creditors might reach, in part at least, his life insurance, even if made payable to some member or members of his family. If it was made payable to his estate, they could reach substantially the whole of it. He had forced the execution and delivery of a preferential mortgage of doubtful validity in favor of his wife. He desired protection in these three respects. He was in ill health—near, as it proved, to death. He was physically unable to protect the interests of himself and wife, a fact recognized by himself and all others concerned. He was compelled to communicate with his counsel through intermediaries—his wife and son. There was but one way in which the protection he desired could be obtained, and that was by a composition. There was confessedly but one man that could effect a composition and continue the business, and that was Firestone. The latter desired to remain in business. Peters was not thinking of such. He, as well as the creditors, turned to Firestone for relief. The latter was willing to undertake the task of working out a composition which would shield Peters, but he was to be made the sole owner of the partnership assets. It was not unnatural that he should not wish an invalid, or, in case of Peters' death, an estate, as a partner. The inference must be that, if he made a composition, he would not be in a financial position to buy the Peters' interest under the terms of the partnership agreement, if it remained in the business, nor, in all probabilities, could Firestone effect an agreement with the creditors, unless the absolute control and ownership of the property were vested in him immediately, or at such reasonable future time as would enable him to put such arrangement into effect. The condition of Peters' health was such that creditors might well hesitate to settle with a firm, one of whose members was an invalid, or to deal with an estate in case of Peters' demise. In consideration of the protection which Peters would get in the three respects named, if Firestone should be able to work out a composition, Peters agreed to convey and did convey his interest in the partnership property and business, without reservation of any right or interest whatsoever. Such was the fully understood intention of the parties in the execution and delivery of the deed, and when the composition was effected the title vested absolutely and beyond recall in Firestone alone.

It is urged with much earnestness that, if Peters intended finally to part with his interest in the property, the contracting parties would not have stip-

218 F.—27

alated that he should remain liable for his proportionate share of the debts, and of attorney's fees and court costs incurred in defending any suit that might be brought on any existing partnership debt or obligation, but would have provided that Firestone should hold him harmless therefrom; that it is unreasonable that Peters should wholly release beyond his control his entire interest in the property, and still consent so to remain liable; and that his agreement to do so is inconsistent with any purpose on his part, other than a temporary conveyance to enable Firestone to work out a compromise. A consideration of this question involves an interpretation of the deed. The argument made is not convincing. This is so, whether we interpret the deed, standing alone and from its four corners, or in the light of the facts and circumstances brought upon the record by the witnesses. It is also true whether the creditors knew or did not know of Peters' possession of life insurance and an individual estate.

The preamble recites that Peters is ready and willing to relinquish every vestige of estate, right, title, and interest in the firm's assets and in all reservations in his favor in the deed of assignment, and also the good will of the business which represented his life's work, for the purpose of enabling, not Peters and Firestone acting through the latter, but Firestone possessed of the full title on the fulfillment of the conditions, to offer a composition to the firm's creditors. The granting clause is broader than the preamble, in that it recites, not merely a relinquishment, but a remising, releasing, relinquishing, and forever quitclaiming of all of such property to Firestone, his heirs and assigns forever—the language employed passing an estate in fee to the real estate and the entire title as to the personal property. The condition following the habendum is that Firestone shall use his best endeavors to obtain assent to and acceptance of the offer made "by him"—not by Peters and Firestone, or for them. If Firestone should not secure acceptance to the extent of 87 per cent., it was then for Peters to elect whether the conveyance should be void or not, Firestone was to be the actor. The thought was present that Peters might suffer the conveyance to stand, if less than 87 per cent. of the creditors came into the adjustment—a thought which must have been born of the belief of both in the hopeless insolvency of the firm, and on the part of Peters that a composition of less than 87 per cent. would to that extent relieve both him and his estate. The paragraph following the recited condition and providing for Peters' continued liability shows that the contracting parties intended a severance of their interests and a termination of their partnership relation. The first sentence in that paragraph affords protection to Firestone. No occasion existed for its insertion, if the partnership relation was to continue, for in that event the continuance of Peters' liability would in any event result by operation of law; nor if the sentence relates to partnership debts only, because the defense of suits affecting it would belong primarily to the assignees. The last sentence of the paragraph imposes a restriction, narrows the powers of the partners, suggests a termination of their prior close relation, a severance of interests, and a fear that one of the parties might act prejudicially, not only to the partnership estate, which was beyond their immediate control and insufficient to satisfy the creditors' claims, but to the individual estate of the other as well. This provision, more important to a sick than an able-bodied man, and such as a person having a private estate would exact, originated with Peters, and is a departure from the broad powers enjoyed by each partner under the articles of copartnership. The last paragraph preceding the witnessing clause broadly recognizes an intended and complete separation of the partners' interests and a termination of the partnership relation on the fulfillment of the prior specified condition. It contemplates the possession of the books and papers of the firm by a "new firm or company," with which Peters would not be identified, but with which Firestone might or might not be connected. Firestone stipulated for himself and for the officers and employés of any such new firm or company so possessing such books and papers, in so far as his control and influence could compel, that Peters should have his and their earnest co-operation and assistance in any litigation against Peters or his estate arising out of the partnership, including in such co-operation and assistance reasonable time, help, and assistance which Peters or his attorney, executor, or administrator might desire or

need for the production, inspection, or explanation of such books and papers. This paragraph cannot be tortured into an expression of intent to continue the old firm or Peters' connection with such firm or company. It harmonizes with the granting clause, and does not consist with any theory other than a dissolution of the firm and an absolute conveyance of Peters' entire interest. A new firm would be other than the old one. Both could not subsist and own the same property. If the word "company" means a "partnership," it was nevertheless a new partnership that was contemplated. The use of the term "officers" in connection with the word "company" necessarily implies, however, a corporation, for a partnership has no officers. The taking over of the property by a corporation would necessitate the retirement of the partnership. The litigation in which Firestone obligated, in so far as he could, himself and the officers and employés of the new enterprise to assist, was not that against the partnership estate, but against Peters and Peters' individual estate. The words "arising out of said partnership" do not limit the immediately preceding words of "his estate," but the preceding word "litigation." The litigation against the partnership estate would not be under the control of Peters and Firestone, or either of them, but of the assignees acting under the direction of the probate court, who had possession of the firm's books and papers. The litigation in which Peters would be concerned and which he could control, and in which he sought and was to have assistance, was such as might be instituted against him and his private estate, concerning which he was solicitous and for whose protection he bartered away his entire interest in and claim to the firm's assets. This paragraph is wholly unnecessary, if Peters and Firestone intended to continue their business relations and the former to retain an interest in the business should a composition be effected; for as a partner Peters would have had unrestricted access to the firm's books and papers, with power to compel the assistance of employés. If such an intention existed, the formation of a new firm would not have been suggested. It is not contended and there is nothing in the deed or in the evidence, if it be considered, to suggest that Peters ever contemplated the location of his interest in a corporation or a new partnership, should either be formed by Firestone. The theory of the intervener's case is that the old partnership was to be continued, or at least that there was to be no severance except in accordance with the articles of copartnership. If Peters intended that any interest he might have, real or possible, in the partnership property, should pass into a new corporation, then as a stockholder he would have access to its books and papers without stipulating therefor. Section 3254, R. S. Ohio; Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189, 56 N. E. 1033, 48 L. R. A. 732. 78 Am. St. Rep. 707. He did not expect any estate to arise to him from the partnership assets, for the reason that (1) he was providing in the same deed for a composition which, in the light of the views expressed at the meeting of the creditors' committee, unless we assume that he and Firestone were acting dishonestly with their creditors, was a reaffirmation that the firm, as matters stood, was insolvent; (2) he was selling outright his entire interest therein present and contingent; and (3) he was providing for protection, as far as attainable, for his individual estate only. If, however, Peters was selling outright his entire interest in the property, and putting it into Firestone's power to exercise sole control over it, or to pass it into the hands of a new firm or corporation, then the insertion of the paragraph became important, because it embodies provisions such as a prudent man and discerning counsel would exact. He had concurred in the view expressed at the creditors' meeting that the partnership assets were inadequate to pay the partnership debts. He knew there was nothing to come from that source, and consequently no litigation would or could arise concerning it. If the partnership assets were more than sufficient to pay its debts, and if Peters and Firestone were nevertheless seeking a compromise, they were purposing a fraud upon their creditors; but this is not claimed. Firestone could not make a disposition of the firm's assets, books and papers, unless he owned the title outright. Full ownership was therefore vested in him, on the fulfillment of the prior named condition; but he was obligated, if he sold, so to sell that neither Peters nor his individual assets should suffer in litigation brought against him or any disadvantage that Firestone could prevent.

The creditors had trusted Peters and Firestone in their days of prosperity. Common honesty exacted that such creditors should be treated fairly by the latter in their hour of adversity. That Peters should remain liable for his proportionate share of· the debts was an evidence of the financially distressed partners' good faith, and would necessarily operate as an influential factor in obtaining consents to the proposed adjustment. To have stipulated for Peters' release would have militated against a composition—the only means whereby Peters and his private estate might escape total or partial depletion. Considering the magnitude of the partnership liabilities, it is quite likely that diligent creditors had acquainted themselves with, at least had acquired some knowledge of, Peters' individual resources. The creditors' committee must have known the precise situation. Their lawyer had assisted in preparing the deed. * * * It is neither charged nor intimated that any of these men acted in bad faith. The existence of Peters' private estate is written upon the face of the deed. It is not a violent presumption that the creditors demanded of Firestone, their committee, the assignees, and their lawyers knowledge of all the property which was liable, primarily and secondarily, to the satisfaction of their claims, and a statement of how and by whom the future business was to be conducted from which Firestone hoped to derive the funds which were to meet the notes to be given in composition. It is unreasonable to suppose that creditors who were shaving their claims to 25 per cent. or 35 per cent. of their· face value would assent to a release of Peters. They naturally and rightfully would try to get as much as under the circumstances they could. If they did that, Peters' individual estate and life insurance were factors, and the settlement was made with reference to them. If so, then to the extent that the amount paid in composition was increased by a consideration of such factors, Firestone by his agreement indirectly obligated himself to relieve, and by his subsequent payment of the partnership debts from the business as conducted by him did individually relieve, Peters and his estate. If Firestone effected the ,composition and continued the business as sole owner, he would become, and in fact did become, in a very practical and substantial way solely bound for the payment of the debts. If he did not pay them his property would be seized. It would be the most available asset for their satisfaction. If he satisfied them, Peters would be absolved. * * * Had Firestone and Peters stipulated that the former should pay all the debts and relieve the latter therefrom, it would, unless assented to by the creditors, have been unavailing beyond the extent of Firestone's individual estate, if he had one, and it is not shown that he had such. If the composition was made with but 87 per cent. of the creditors, Peters would have been able to satisfy his proportionate share of the unpaid residue. The reasonable inference is that, if the firm's assets should be sold and the proceeds applied on its debts, the partners could not have satisfied in full the ·unpaid residue, else the creditors would not have accepted in settlement so ;small a percentage. It was politic and wise that Peters should remain liable for his share of the debts. He could well afford to carry that risk for the moral effect it would produce. Proof of its wisdom is found in the fact that his estate was never called upon to pay even so much as a penny. He was physically unable to attempt the rescue of the firm's property, which had passed beyond his control. In so far as he was concerned, it was wholly lost, and his private estate in danger of loss, perhaps of obliteration. To have secured protection for it and at the same time to have exacted from Firestone the assumption of all the debts, would have been unfair to the latter, a situation which it is not·reasonable to assume that Firestone would accept, for if the composition, when made, was not performed, each would in law still remain liable for all of the firm's. debts. Peters had nothing to give for such assumption, if the firm's estate was sold and applied on its debts, or unless such a composition were so made as left some remaining equity. The extent of that equity, if wrought out, was uncertain. He might well surrender his chance on that for the chance of saving his life insurance and his private estate, both of which were realities. It is true that Firestone was liable for all the debts and that.it was his duty to satisfy them. His reward for working out the composition was to be the sole ownership of the property. It was competent for Peters to say· that he should have it. * * * I have found

no authority, and diligent counsel have cited none, which made it his duty as a partner to compromise without compensation the firm's debts in such a way as would indirectly and yet substantially relieve his business associate's private estate from liability by pledging all that he himself had, if he had anything, and that he might thereafter acquire, to satisfy them.

It is the aim of the courts to preserve, not to destroy. They should be astute to find means to make acts effectual, according to the honest intent of the parties. Kelly v. Calhoun, 95 U. S. 710, 713, 24 L. Ed. 544. That construction will always be adopted which will accomplish the object for which the instrument was executed. Hubbird v. Goin, 137 Fed. 822, 830, 70 C. C. A. 320 (C. C. A. 8).

[9] It thus appears that the whole of the intention of the parties was not expressed in either the preamble or the operative parts of the deed, and that the dispositive portion of the deed is the more comprehensive in these respects. It is also as much broader as a conveyance in fee is broader than a relinquishment, and the operative portion of the deed must therefore control, and not the preamble, to which, in the light of the authorities heretofore mentioned and Warvelle on Vendors, §§ 129, 357, Walker v. Tucker, 70 Ill. 527, 536, 537, Clark v. Post, 113 N. Y. 17, 25, 20 N. E. 573, and Norton on Deeds, chapter 11, an undue and mistaken importance is attached. It was permissible to the creditors to rebut the averment of want of consideration by proof of the real one. Jenkins v. Pye, 12 Pet. 241, 253, 9 L. Ed. 1070. In view of Mr. Justice Miller's language in Hitz v. Nat. Met. Bank, 111 U. S. 722, 727, 4 Sup. Ct. 613, 28 L. Ed. 577, we need not deeply concern ourselves whether the $1 named in the deed was paid or not. A different consideration from that expressed may be shown, if, as in this case, it is not inconsistent with or repugnant to that named in the deed. Groves v. Groves, 65 Ohio St. 442, 449, 62 N. E. 1014; Vail v. McMillan, 17 Ohio St. 617, 623; Richardson v. Traver, 112 U. S. 423, 431, 5 Sup. Ct. 201, 28 L. Ed. 804.   *   *   *

The common pleas court held that a trust existed in favor of the Peters estate, and referred the case to a master commissioner to take, state, and report to the court an account between Firestone and Mrs. Peters for the court's further action. Firestone appealed to the circuit court. His appeal was dismissed, in harmony with the prior ruling of that court in another case hereafter to be noticed, on the ground that the trial court's order was interlocutory and not final. This accords with the ruling of the Supreme Court in the unreported case of McManigal v. Columbus & Hocking Coal & Iron Co., 79 Ohio St. 432, 87 N. E. 1138, No. 10997, which reached that court from the above-mentioned circuit court. From a personal examination of the file papers it appears that the trial court held McManigal to be a trustee who had violated his trust, and that he had diverted profits and appropriated them to his own use. As in this case, an accounting was ordered. The circuit court dismissed the appeal taken to the trial court's order as interlocutory. That precise ruling was assigned as error, and the decision of the Supreme Court affirming the dismissal by the circuit court was based on the error so assigned, as will appear from the entry on its journal No. 22, page 442.   *   *   *   *

The order made by the common pleas court is therefore not final, nor is it binding on this court. The issue of estoppel was not before that court, nor was the evidence otherwise so ample. But, were these matters absent, my views as to the degree of importance to be attached to the preamble and as to the interpretation of the residue of the deed are so different from those expressed by that court that, notwithstanding my great deference for its judgment and my desire to avoid a conflict of decision, I should be not able to concur in its conclusions.

If what Peters conveyed was the thing of value now asserted, and if there was present a purpose to preserve it for the benefit of himself or his estate, or both, there would have been, in view of the mature deliberation attendant on the preparation and execution of the deed, some apt expression indicative of that intent, nor would there subsequently have been a long-continued and unequivocal line of conduct inconsistent with any theory other than the clothing of Firestone with the exclusive ownership of such property. The deed did not create a trust. It made Firestone the sole and absolute owner of all the property described in it. The intervener, by her acts and conduct prior

and subsequent to the execution and delivery of the deed, so understood it, and recognized Firestone as the exclusive owner of the firm assets. She is not entitled to an accounting, or to share in the distribution of the defendant's assets.

Her intervening petition is dismissed, at her costs.