## UNITED STATES v. A. BENTLEY & SONS CO.

(District Court, S. D. Ohio, E. D. October 16, 1923.)

### No. 2178.

1. **United States ⟨⟩60—Persons dealing with government officers and agents bound by limitations on their authority.**

   Persons dealing with government officers and agents are bound to inquire and take notice of the extent of such officers' and agents' authority, and are bound to recognize that such officers and agents must observe fairness and good faith as between themselves and the government.

2. **United States ⟨⟩70(1)—Contract in language of government's own officers construed most strongly against it.**

   When the government makes a contract with an individual or corporation, it divests itself of its sovereign character as to such transaction, and its contract is governed by the same laws governing individuals, under like circumstances, and a contract in the language of the government's own officers is therefore construed most strongly against it.

3. **United States ⟨⟩70(1)—Army camp construction contractor held not trustee for government, and nothing added to contract by provision as to protecting interests of government.**

   A corporation having a contract to construct an army camp on a cost plus contract was not in the position of trustee for the government,

---
⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and a contract provision that it would protect and subserve the interests of the United States added nothing to the contract, since it was in any event bound to make the best terms.

**4. United States ⬦⟶73—Fairness of transactions between army camp contractor and government contracting officer more closely scrutinized than transactions between individuals.**

The fairness of a contractor's transactions with the contracting officer of the government, under a contract for the construction of an army camp during the emergency of war, will be more rigidly scrutinized than if it had been a dealing between private individuals.

**5. Appeal and error ⬦⟶834—Courts ⬦⟶87—Affirmance of previous judgment on rehearing restores original judgment and concludes all rights and establishes a precedent.**

Where a rehearing is granted, there is a new consideration of the case on the same record and the judgment previously made is suspended; but, where the previous judgment is affirmed on rehearing, it is restored to full force and finally concludes all rights and must be respected as authority.

**6. United States ⬦⟶73—Contracting officer's decisions and payments on cost plus contract held not conclusive on government.**

Where a cost plus contract for the construction of an army camp provided for a monthly statement of costs on which, in case of disagreement, decision of the contracting officer was to govern and that the statement so made and all payments thereon should be final except as provided in another article reserving final decision to the Secretary of War, the contracting officer's decisions and payment were not conclusive evidence of complete performance, in view of the government's reservation of the right of action for breach of contract and the provision for inspection and audit.

**7. United States ⬦⟶71—Words "assignment" and "transfer" held to be broader than, and to include, "sublet."**

Under Rev. St. § 3737 (Comp. St. § 6890), providing that no contract with the United States shall be transferred, and a contract for the construction of an army camp made pursuant thereto, the words "assignment" and "transfer" are broader than, and include, the word "sublet."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignment; Transfer.]

**8. Contracts ⬦⟶159—Meaning of word "and," as used in compound sentence of contract, stated.**

The use of the co-ordinate conjunction "and" to connect two members of a compound sentence separated by a semicolon *held* to make the second member a continuation of the first member.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, And.]

**9. Contracts ⬦⟶152—Caption may be read in connection with ambiguous language of body of article to determine intent.**

Where the body of an article of a contract was ambiguous, resort could be had to the caption to determine intent of the parties.

**10. United States ⬦⟶75—Contract held to give government right "to audit" as well as "to inspect" contractor's books.**

Where the caption of an article of a contract read "inspection and audit," it implied the right to audit the contractor's books and records, though the body of the article specifically mentioned only the right to inspect, "to inspect" meaning to look, to view or oversee for the purpose of ascertaining the quality or condition of the thing, "to audit" meaning to hear, examine, and determine a claim or claims by their allowance or

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

disallowance or rejection in toto, or in part, so that the examination in consideration of all the items of a claim constitutes an audit, though some items may be allowed and others rejected.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Audit; Inspect—Inspection.]

11. **United States ⊜⇒75—Right of government to verify records of army camp contractor after completion of contract held necessarily implied.**

Under a contract for the construction of an army camp providing for the preservation of all the books, records, and other papers for two years after the completion of the contract, the government's right to check up and verify the records after payments had been made was necessarily implied, and this right was mutual and reciprocal.

12. **Contracts ⊜⇒168—What is implied is as much part of contract as what is expressed.**

What is necessarily implied is as much a part of the contract as what is expressed.

13. **Contracts ⊜⇒162—Should be construed to harmonize various clauses, if possible.**

In the construction of written contracts, the various clauses should be harmonized, if possible, and the court should seek to avoid a construction which would nullify or render inconsistent one clause or provision with another.

14. **United States ⊜⇒75—Reservation of right of action for breach of contract held applicable to whole contract, and not merely to provisions of particular article.**

A provision of a contract for the construction of an army camp that "all rights of action for any breach of this contract are reserved to the United States" *held* applicable to the whole contract and should not be restricted to the provisions of the particular article where found.

15. **United States ⊜⇒73—Conclusiveness of contracting officer's acts cannot be implied, but must be expressly provided for in contract.**

To make government contracting officer's decisions and payments under a cost plus contract for the construction of an army camp conclusive on the government, the contract must so provide in express terms.

16. **United States ⊜⇒75—If payment under contract was so excessive as to show fraud, government may have relief without alleging amount paid on contract or its honest value.**

If the amount paid by the government under a cost plus contract for the construction of an army camp was sufficiently in excess of what it should fairly have paid to warrant the inference of fraud, the government, on adequate proof, was entitled to relief, even though its petition did not allege the amount paid on the contract nor indicate what the honest value of the construction should have been.

17. **Courts ⊜⇒347—Federal courts may order bill of particulars in states where it obtains.**

In states in which the use of bills of particulars obtains, a federal court may order a bill of particulars when necessary to clarify the issues, irrespective of whether the action is founded on contract or tort.

18. **Pleading ⊜⇒367(2)—Motion to make more definite and certain used in Ohio instead of bill of particulars.**

Though a bill of particulars cannot be used in Ohio except in cases originating in justice of the peace courts, under Gen. Code Ohio, § 11336, if the allegations of the petition are so general as to afford opportunity for surprise when the proof is taken, defendant may move to make the pleading more definite and certain.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

19. **Pleading ⊚⟹12—Facts known to opposite party, or inherently incapable of exactitude, require less certainty in pleading than other cases.**

Where facts to be alleged are peculiarly known or presumed to be known by the opposite party or are inherently incapable of being exactly pleaded, less certainty and particularity are required of the pleading than in ordinary cases.

20. **United States ⊚⟹75—Petition charging fraud should particularize with reasonable certainty.**

A petition charging fraud by the contractor of an army camp constructed on the cost plus basis should show with reasonable certainty of what the fraud consisted, how it escaped detection, and why it was not detected at the time of its perpetration or for so long a time thereafter.

21. **United States ⊚⟹75—Allegation that contractor sublet contract, without alleging plaintiff did not consent thereto, held defective.**

An allegation of a petition charging fraud by army camp contractor under cost plus contract, charging that defendant sublet portions of the work, without alleging that government did not consent thereto, or that it was ignorant thereof, *held* defective.

22. **Pleading ⊚⟹362(3)—In action for overpayment of army camp contractor, allegation relating to patriotism shoud be stricken from petition.**

In an action by the United States against an army camp contractor constructed on cost plus basis, an allegation of the petition relating to patriotism and loyalty of persons intrusted with the performance of emergency war work should be stricken; patriotism being no part of the consideration for the contract.

At Law. Action by the United States against the A. Bentley & Sons Company. On motion to strike out and to make petition more definite and certain. Motions overruled, except in so far as stated in opinion.

Action by the United States to recover of defendant, contractor for the construction of Camp Sherman at Chillicothe, Ohio, $5,000,000, claimed to be overpayment unlawfully obtained for the building of such camp on the cost plus plan. Attack made on the petition by motion. Pertinent portions of the contract involved not specifically set forth in the opinion are as follows:

### Article I.

* * * The title to all work completed or in the course of construction shall be in the United States; and upon delivery at the site of the work, and upon inspection and acceptance in writing by the contracting officer, all machinery, equipment, hand tools, supplies, and materials for which the contractor shall be entitled to be reimbursed under paragraph (a) of article II hereof, shall become the property of the United States. These provisions as to title shall not operate to relieve the contractor from any duties imposed hereby or by the contracting officer.

### Article II.

*Cost of the Work.*—The contractor shall be reimbursed in the manner hereinafter described for such of its actual net expenditures in the performance of said work as may be approved or ratified by the contracting officer and as are included in the following items:

(a) All labor, material, machinery, hand tools not owned by the workmen, supplies and equipment, necessary for either temporary or permanent use for the benefit of said work; but this shall not be construed to cover machinery or equipment mentioned in section (c) of this article. The contractor shall make no departure from the standard rate of wages being paid in the locality where said work is being done without the prior consent and approval of the contracting officer. * * *

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

### Article III.

*Determination of Fee.*—As full compensation for the services of the contractor, including profit and all general overhead expense, except as herein specifically provided, the contracting officer shall pay to the contractor in the manner hereinafter prescribed a fee to be determined at the time of completion of the work from the following schedule, except as hereinafter otherwise provided:

If the cost of the work is under $100,000.00 a fee of ten per cent. (10%) of such cost.

If the cost of the work is over $100,000.00 and under $125,000.00 a fee of $10,000.00.

If the cost of the work is over $125,000.00 and under $250,000.00 a fee of eight per cent. (8%) of such cost.

If the cost of the work is over $250,000.00 and under $266,666.67 a fee of $20,000.00.

If the cost of the work is over $266,666.67 and under $500,000.00 a fee of seven and one-half per cent. (7½%) of such cost.

If the cost of the work is over $500,000.00 and under $535.714.29 a fee of $37,500.00.

If the cost of the work is over $535,714.29 and under $3,000,000.00 a fee of seven per cent. (7%) of such cost.

If the cost of the work is over $3,000.000.00 and under $3,500,000.00 a fee of $210,000.00.

If the cost of the work is over $3,500,000.00 a fee of six per cent. (6%) of such cost.

Provided, however, that the fee upon such part of the cost of the work as is represented by payments to subcontractors, under subdivision (b) above. shall in each of the above contingencies be five per cent. (5%) and no more of the amount of such part of the cost.

The cost of materials purchased or furnished by the contracting officer for said work, exclusive of all freight charges thereon, shall be included in the cost of the work for the purpose of reckoning such fee to the contractor, but for no other purpose.

The fee for reconstructing and replacing any of the work destroyed or damaged shall be such percentage of the cost thereof—not exceeding seven per cent. (7%)—as the contracting officer may determine.

The total fee to the contractor hereunder shall in no event exceed the sum of $250,000.00, anything in this agreement to the contrary notwithstanding.

### Article IV.

*Payments.*—On or about the seventh day of each month the contracting officer and the contractor shall prepare a statement showing as completely as possible: (1) the cost of the work up to and including the last day of the previous month, (2) the cost of the materials furnished by the contracting officer up to and including such last day, and (3) an amount equal to three and one-half per cent. (3½%), except as herein otherwise provided, of the sum of (1) and (2) on account of the contractor's fee; and the contractor at such time shall deliver to the contracting officer original signed pay rolls for labor, original invoices for materials purchased and all other original papers not theretofore delivered supporting expenditures claimed by the contractor to be included in the cost of the work. If there be any item or items entering into such statement upon which the contractor and the contracting officer cannot agree, the decision of the contracting officer as to such disputed item or items shall govern. The contracting officer shall then pay to the contractor on or about the ninth day of each month the cost of the work mentioned in (1) and the fee mentioned in (3) of such statement, less all previous payments. When the statement above mentioned includes any work of reconstructing and replacing work destroyed or damaged, the payment on account of the fee in (3) for such reconstruction and replacement work shall be computed at such rate. not exceeding three and one-half per cent. (3½%), as the contracting officer

may determine. The statement so made and all payments made thereon shall be final and binding upon both parties hereto, except as provided in article XIV hereof. The contracting officer may also make payments at more frequent intervals for the purpose of enabling the contractor to take advantage of discounts at intervals between the dates above mentioned or for other lawful purposes. Upon final completion of said work the contracting officer shall pay to the contractor the unpaid balance of the cost of the work and of the fee as determined under articles II and III hereof. * * *

### Article XII.

*Right to Transfer or Sublet.*—Neither this contract, nor any interest therein, shall be assigned or transferred. The contractor shall not enter into any subcontract for any part of the work herein specified without the consent and approval in writing of the contracting officer. In case of such assignment, transfer, or subletting without the consent and approval, in writing, of the contracting officer, the contracting officer may refuse to carry out this contract either with the transferor or transferee, but all rights of action for any breach of this contract by the contractor are reserved to the United States. * * *

### Article XIV.

*Settlement of Disputes.*—This contract shall be interpreted as a whole and the intent of the whole instrument, rather than the interpretation of any special clause, shall govern. If any doubts or disputes shall arise as to the meaning or interpretation of anything in this contract, or if the contractor shall consider himself prejudiced by any decision of the contracting officer made under the provision of article IV hereof, the matter shall be referred to the officer in charge of cantonment construction for determination. If, however, the contractor shall feel aggrieved by the decision of the officer in charge of cantonment construction, he shall have the right to submit the same to the Secretary of War, whose decision shall be final and binding upon both parties hereto.

Harry M. Daugherty, Atty. Gen., Benson W. Hough, U. S. Dist. Atty., of Columbus, Ohio, Roscoe C. McCulloch, Wm. T. Chantland, Ralph E. Moody, all of Washington, D. C., Jas. M. Butler, of Columbus, Ohio, and John P. Phillips, of Chillicothe, Ohio, for the United States.

Marshall & Fraser and Brown, Hahn & Sanger, all of Toledo, Ohio, and John F. Wilson, of Columbus, Ohio, for defendant.

SATER, District Judge (after stating the facts as above). [1, 2] The plaintiff's attitude is that as between it and the defendant a fiduciary relation existed—that defendant's posture was that of a trustee and that of the government the beneficiary of a trust. It is true, the courts have regarded government officers and agents, when dealing for or with the government to which their services are due, as occupying a position similar to that of a guardian transacting business for or with his ward. Note, for instance, Garman v. U. S., 34 Ct. Cl. 237, 242; U. S. v. Carter, 217 U. S. 286, 306, et seq., 30 Sup. Ct. 515, 54 L. Ed. 769, 19 Ann. Cas. 594; City of Findlay v. Pertz, 66 Fed. 427, 435, 13 C. C. A. 559, 29 L. R. A. 188 (C. C. A. 6); Crocker v. U. S., 240 U. S. 74, 78, et seq., 36 Sup. Ct. 245, 60 L. Ed. 533. It is also true that persons dealing with government officers and agents, whether such officers or agents represent a municipal, a state, or the national government, are in duty bound to inquire as to and to take notice of the extent of such officers' and agents' authority and power and are to be

held to a recognition that such officers and agents must observe fairness and good faith as between themselves and the government and may not be swayed to the prejudice of the interests of their cestui que trust. Both are expected to exercise honesty and common sense. Wentworth v. U. S., 5 Ct. Cl. 302; Livingston v. U. S., 3 Ct. Cl. 131. But no cases have been found which hold that a person who is not an officer or a representative of the government occupies in dealing with it the position of or a position akin to that of a guardian or trustee. When the government enters into a contract with an individual or corporation, it divests itself of its sovereign character as to that particular transaction and takes that of an ordinary citizen and submits to the same law as governs individuals under like circumstances. U. S. v. North Am. Com. Co. (C. C.) 74 Fed. 145, 151; Cooke v. U. S., 91 U. S. 389, 398, 23 L. Ed. 237; 39 Cyc. 742. In Mann v. U. S., 3 Ct. Cl. 404, 411, it was said:

"We have many times decided that, when the United States, through their duly authorized agents and officers, enter into contract arrangements and stipulations with their citizens, in matters pertaining to the public service, and in the mode provided by law, that they, pro hac vice, relinquish their sovereign character and subject themselves to those rules of justice and right which all just governments administer and enforce between man and man. * * * It is true, as we held in the case of Elias Beard v. The United States (3 C. Cls. [122]), that we hold a party settling up a contract with public officers, in regard to public affairs, to fuller proof of authority, and make a more rigid scrutiny into the fairness of the transaction than where parties sui juris, are acting for themselves."

The government's contracts are to be interpreted the same as those between individuals to ascertain the intent of the parties and to give the effect accordingly, if that can be done consistently with the terms of the agreement. Hollerbach v. U. S., 233 U. S. 165, 171, 34 Sup. Ct. 553, 58 L. Ed. 898; 10 Ency. U. S. Sup. Ct. Rep. 762, and cases cited. A contract couched in the language of the government's own officers (and such is said to be true of the contract here in question) is construed most strongly against it, as in the case of an individual whose contract is framed in his own language. Garrison v. U. S., 7 Wall. 688, 690, 19 L. Ed. 277; Med. Soc. v. Gilbreth (D. C.) 208 Fed. 899, 912; Shealey, Government Contracts, §§ 94, 95; Noonan v. Bradley, 76 U. S. (9 Wall.) 394, 409, 19 L. Ed. 757; Insurance Co. v. Wright, 68 U. S. (1 Wall.) 456, 458, 17 L. Ed. 505; State v. Worthington, 7 Ohio, 171, 172, Pt. 1.

[3] A cost plus contract is here involved, but a trust did not arise by virtue of paragraph (h), article VI, by the terms of which the defendant agreed "at all times (to) use its best efforts in all its acts hereunder to protect and subserve the interest of the contracting officer and the United States."

Such paragraph added nothing to the contract, for the reason the defendant was bound in any event to make the best terms it could, if full reimbursement by the government was expected. Westendorf v. Dininny, 103 App. Div. 593, 92 N. Y. Supp. 858. In Carleton v. Foundry & Machine Products Co., 199 Mich. 148, 165 N. W. 816, 19 A. L. R. 1141, the plaintiff was operating under a cost plus contract. Near

the close of the opinion, the relation of the contracting parties is thus defined:

"We may take judicial notice that the arrangement of paying cost, plus a percentage as a contract price for a completed job, is growing in favor, and is becoming a common plan adopted by contractors in place of a lump sum payment. The federal government has let contracts involving the expenditure of enormous sums of money on this plan. The change is only in the method of computing payment. There is no change in the relation of the parties from that which exists where the payment is a lump sum. The manner of computing payment for the completed job is not controlling; a change in this regard does not convert an independent contractor into an employee, either at common law or within the meaning of the act."

The act referred to was the Workmen's Compensation Act (Acts Mich. Extra Sess. 1912, No. 10). It was said that Carleton was in the exercise of a distinct and independent employment and doing a job in the line of his business. The Carleton Case was cited and quoted with approval in Knowlton v. Gibbons, 210 Mich. 547, 550, 178 N. W. 63, in which it was distinctly held that, in a cost plus contract, the relation of the parties is not that of principal and agent. An examination of the several cases mentioned in the note to Shaw v. Beaumont Co., 2 A. L. R. 122 (88 N. J. Eq. 333, 102 Atl. 151), and of U. S. v. Mason & Hanger Co., 260 U. S. 323, 43 Sup. Ct. 128, 67 L. Ed. 286, hereafter considered, each of which involved a cost plus contract, fails to show any distinction in treatment between a contract of that kind and one which provides for payment in a lump sum.

It follows from the foregoing the defendant, by reason of its contract with plaintiff, did not occupy the position or assume the duties of a guardian. No trust relation of the character of guardian and ward existed, and the averments of the petition regarding a trust relation should be eliminated. Article III of the contract, it will be observed, fixes the percentage of the contractor's profit based on cost, with a limitation, however, that the total sum to be received by him, termed a "fee," should not exceed $250,000; but it will be noted that, notwithstanding the use of such term, wherever the defendant is mentioned in the contract it is entitled the "contractor," as is usual in building contracts, to whom was accorded the privilege of subcontracting. The situation was such that, if the contract was taken for a lump sum, the advance in cost for labor and materials was liable on the one hand to bankrupt the contractor, and, if it was given a percentage as a profit on the aggregate cost of labor and materials, whatever that aggregate might be, its compensation or profits, on the other hand, would probably be an excessive sum, even in war times. The contract was so drawn as to reward the contractor handsomely and at the same time protect the government against the charge of improvidence.

[4] The contract being made when an emergency existed and the defendant being required to report and account to and thus to deal with a public officer, the fairness of its transactions will be more rigidly scrutinized than if it had been dealing with a private individual; but under the provisions of article V, the government's agent was at all times authorized fully to check up the defendant and all its doings throughout the whole period of construction and to determine the sys-

tem of accounting the defendant should employ, and was also given access to defendant's books, papers, and records for a period of two full years after the completion of the contract. The position of the United States was not, therefore, so hard as that of the plaintiff in Bulow v. Goddard, 1 Nott & McC. 45, 55, 9 Am. Dec. 663.

[5] The claim is made by the government that the judgment rendered in U. S. v. Mason & Hanger Co., decided December 4, 1922, 260 U. S. 323, 43 Sup. Ct. 128, 67 L. Ed. 286, was opened up and vacated by the rehearing, and the opinion rendered is therefore not in any respect controlling. All of the pleadings and briefs in that case have been examined. A rehearing is simply a new hearing and a new consideration of the case on the same record. Read v. Patterson, 44 N. J. Eq. 211, 218, 219, 14 Atl. 490, 6 Am. St. Rep. 877. If granted, the attitude of the case is the same as if it had not previously been submitted. First National Bank v. First National Bank, 76 Ind. 561, 572, 40 Am. Rep. 261. But when a judgment is opened up and the party obtaining the rehearing is again defeated and the previous judgment is affirmed, the original judgment is restored in full force and finally concludes all rights in the premises. 23 Cyc. 974; Stewart v. Stewart, 96 Iowa, 620, 627, 65 N. W. 976; Argenti v. City of San Francisco, 16 Cal. 255; 3 Cyc. 219. As the judgment theretofore rendered was affirmed on the rehearing of the Mason & Hanger Co. Case, such original judgment is conclusive and, if that case is pertinent, it is to be respected as an authority. It is improbable that the Supreme Court allowed the opinion previously written to be promulgated and stand without change, if, having regard to the facts involved, it disapproved of its reasoning or phraseology. The question here is, considering the facts of that case and the issues here presented, has it any controlling influence? I am disposed to think the question should be answered in the negative. Article IX expressly required the contractor, prior to commencing the work, to execute a bond in the sum of $250,000. The necessity of executing such a bond was not for the contracting officer's determination. Its approval or disapproval, when presented, did, however, rest upon him. Article II. He was at liberty to disapprove the bond for excessive cost as well as for any imperfection in it. By the express terms of article II, approval was to be followed by payment of the cost of such bond. There was no claim that the sum paid therefor was excessive, nor was negligence, fraud, or corrupt conduct charged. The officer's duty to make payment was clear. The payment made by him was under the circumstances necessary, final, and binding, and might well have been so held without reference to articles IV and XIV, and even if such articles had not been part of the contract. It will be further noted that the opinion contains no reference to sections I, V, or XII, nor did the case require consideration of any of those articles.

[6] Touching the finality of monthly payments mentioned in articles IV and XIV, the plaintiff's contention is that those are not the only articles of the contract to be considered on that question; that the concluding sentence in the last paragraph of article I, and the final clause of article XII, are to be considered along with articles IV and XIV; and that the finality and binding force mentioned in articles IV and XIV

extend only to the sums which the defendant should be held to be entitled to justly receive on account in monthly payments made to aid him as the work of construction progressed. The defense insists that decisions and payments made under articles IV and XIV finally and forever conclude all parties concerned, unless impeached for fraud.

If I understand the defendant's position, it is that, if it was intended to insert in the contract a reservation of the right of action for any breach of the contract, it was unusual and unlawyerlike to locate it under the caption "Right to Transfer or Sublet;" that, if the closing sentence of article XII was intended as a limitation on the finality of the contracting officer's payments, there would not have been in article IV an exception in favor of article XIV merely, but an exception as to article XII also; that article XII as an entirety relates solely to the assignment, transfer, or subletting of the contract; that the last clause of that article, in view of the context, means no more than that all rights of action for any breach of this contract (in the respects named in the preceding portion of such article) by the contractor were reserved to the United States; that such recital is unnecessary, conferring no right which the United States would not have had, if the clause had been omitted; and that article XII is 'manifestly but an amplification of section 3737, R. S. U. S. (Comp. St. § 6890), which section is as follows:

"No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States."

[7] The word "assignment" occurring in the statute has been used as the equivalent of the word "transfer." See, among other cases, Burck v. Taylor, 152 U. S. 634, 648, 14 Sup. Ct. 696, 38 L. Ed. 578; Hegness v. Chilberg, 224 Fed. 28, 33, 139 C. C. A. 492 (C. C. A. 9); Dulaney v. Scudder, 94 Fed. 6, 36 C. C. A. 52 (C. C. A. 5). And either of those words (they being treated as synonymous) therefore is a broader term than and includes "sublet." Hendrick v. Daniel, 119 Ga. 358, 46 S. E. 438.

Some time after the case had been argued orally, the court asked counsel for their views on article V of the contract. In their supplemental briefs they did not sufficiently stress that article, which, in so far as thought pertinent, is as follows:

"*Inspection and Audit.*—The contracting officer shall at all times be afforded proper facilities for inspection of the work and shall at all times have access to the premises, to the work and material, and to all books, records, correspondence, instructions, plans, drawings, receipts, vouchers, and memoranda, of every description of the contractor pertaining to said work; and the contractor shall preserve for a period of two years after its completion or cessation of work under this contract, all the books, records, and other papers just mentioned. Any duly authorized representative of the contractor shall be accorded the privilege of examining the books, records, and papers of the contracting officer relating to said work for the purpose of checking up and verifying the cost of said work. The system of accounting to be employed by the contractor shall be such as is satisfactory to the contracting officer."

Instead of setting forth in detail the familiar rules for the interpretation of contracts, reference is made to Judge Sanborn's admirable and pertinent statement of them in Pressed Steel Car Co. v. Eastern Railway Co. of Minnesota, 121 Fed. 609, 611, 57 C. C. A. 635 (C. C. A. 8.)

Significance attaches to the fact that article IV does not provide that the last payment made on completion of the work is to be final and binding, the language being:

"Upon final completion of said work the contracting officer shall pay to the contractor the unpaid balance of the cost of the work and of the fee as determined under articles II and III."

The parties did not stipulate that the final completion and payment for the work of construction should be conclusive evidence of the defendant's performance of the contract. For aught that appears, such payment may have included matters omitted from defendant's prior monthly statements, for they were to show only "as completely as possible" the work done in the month for which any given payment was made. The "unpaid balance" means any sum of money due on the completion of the work. It is improbable the monthly payments should be conclusively final and binding and the final payment not of that character.

[8] The first sentence of article V is a compound sentence consisting of two members; interposed between them is a semicolon, but they are connected by the co-ordinate conjunction "and," which signifies and expresses the relation of addition. City of La Salle v. Kostka, 190 Ill. 130, 60 N. E. 72; Hyatt v. Allen, 54 Cal. 353, 367. The word "and" is often used to indicate connection of what follows with what has gone before it in the way of narration or description (Brothers' Adm'r v. Rutland, 71 Vt. 48, 42 Atl. 980), and, according to the Century Dictionary, that which follows the word is "in continuation of a previous sentence expressed, implied or understood." In the instant case it performs the office of making the second member a continuation of the previously expressed sentence. The thought conveyed by the first member is thus imported into the second, and the compound sentence as a whole is a provision inserted for the benefit and protection of the government. Strangely, neither the sentence in its entirety nor either of its members expressly states the purpose of the inspection provided or of the required preservation of the defendant's books, records, and papers for a period of two years after the completion or cessation of work under the contract (an omission which a skillful and discerning lawyer should have detected); but obviously the right of access and inspection reserved by the first member would be an inadequate safeguard, unless inhering in and inseparable from the exercise of that right was the intent and right that knowledge thus acquired should be used in determining the cost of the work.

[9-12] The caption of the article, "Inspection and Audit," was sanctioned by both parties. It performs the same office as a preamble to a contract or the title to a statute. It is introductory, declaratory of the intention of the parties, and expressive of the article's great object (Lessee of Burgett v. Burgett, 1 Ohio, 469, 481, 13 Am. Dec. 634),

and as the body of the article is somewhat ambiguous, resort may be had to the caption to show the parties' intent. Peters v. McLaren, 218 Fed. 410, 416, 134 C. C. A. 198; Smythe v. Fiske, 90 U. S. (23 Wall.) 374, 380, 23 L. Ed. 47. In giving construction to the article, therefore, the rule applicable to the use that may be made of the title to a legislative enactment should govern, and, viewing the article as a whole, including the caption, such an interpretation must be given it as may appear best calculated to advance its object by effecting the design of the parties. Wilber v. Paine, 1 Ohio, 251, 256. "To inspect" means to look; to view or oversee for the purpose of examination; to look into; to view and examine for the purpose of ascertaining the quality or condition of the thing; to view and examine for the purpose of discovering and correcting errors. People v. General Committee, 25 App. Div. 339, 49 N. Y. Supp. 723, 728; Pabst Brewing Co. v. Crenshaw, 198 U. S. 17, 33, 25 Sup. Ct. 552, 49 L. Ed. 925. "To audit" means "to examine and verify, as an account or accounts." Cent. Dict. In its broad sense "audit" means to hear, examine, and determine a claim or claims by their allowance or disallowance or rejection in toto, or in part, so that the examination and consideration of all the items of a claim constitutes an audit, though some items may be allowed and others rejected. People v. Orleans County Supervisors, 16 Misc. Rep. 213, 38 N. Y. Supp. 890, 891; Machias River Co. v. Pope, 35 Me. 19, 22; People ex rel. v. Matthies, 179 N. Y. 242, 72 N. E. 103; 4 Words & Phrases Judicially Defined, Second Series, 931. "To audit" primarily means a hearing, but not necessarily so. Sinclair & Co. v. National Surety Co., 132 Iowa, 549, 107 N. W. 184.

Considering the language of the compound sentence and the caption of the article, the required interpretation to advance the object of the article and effect the design of the contracting parties was that the government should have the right of inspection of all of the defendant's books, records, and other papers, for the purpose of checking up and verifying the cost of construction, not only as the work of construction progressed, but for a period of two years thereafter. The government's right thus to verify and check up, if not affirmatively expressed, is at least necessarily implied, and what is implied is as much a part of the contract as what is expressed. 9 Cyc. 252, 582; 6 R. C. L. 856. If the decisions and payments authorized by articles IV and XIV were to be conclusively final and binding, and if no checking up and verification of transactions was intended, no occasion existed for and no useful purpose would be served by the requirement as to the preservation of the defendant's books and records of whatever description for the two-year period. That the presence of that provision as to two years could not have been due to a desire to check up defendant as the work progressed is perfectly obvious. The purpose of the sentence in its entirety was to afford an opportunity for a leisurely examination and verification of the payments made and of the cost of the work. Such an intent would, in view of the circumstances surrounding the parties, be natural and reasonable. The defendant obligated itself to furnish, in the shortest possible time, the labor, materials, tools, machinery, facilities, and supplies, and to do all things

necessary for the complete construction of a camp which was to house and become the temporary residence of a population equal to that of a city of very considerable size. The drawings and specifications were subject to change. The contractor was consequently to make such changes, modifications, and additions as conformity to modified drawings and instructions required, and there was thus no previously determined exact measure of services to be rendered. The contractor was to begin work at the earliest time practicable and diligently proceed to its completion at the earliest possible date. The cantonment was to be thus speedily constructed during a great national emergency.

The undertaking was one of great magnitude, involving the employment of a considerable army of men of various trades and occupations and of varying degrees of skill, the purchase of a great variety of materials in large quantities, extensive business transactions differing widely in character, and statements of accounts necessarily hastily prepared, into which errors were more apt to enter and concerning which fraud could more easily be practiced (if a fraudulent intent were present) than in construction work conducted under usual circumstances. Ordinary prudence would suggest, as a precaution for the detection of mistake and fraudulent or other reprehensible conduct, the retention for a time of all books, papers, and instruments of whatever kind for a subsequent study of the same touching the work of construction and for the rectification of any errors or wrongdoing. A comparison of the defendant's records and papers with those of the government (for the article contemplates that such should be kept by it) could thus be deliberately and thoroughly made. Under article IV, as monthly payments were received, the original signed pay rolls for labor, original invoices for materials purchased, and all other original papers not previously delivered to the contracting officer by the defendant and supporting expenditures claimed by it to be included in the cost of the work, were to be surrendered to such officer. Why should possession of all such instruments be lodged with the government, if no use could be made of them, as would be the case if the decisions and monthly payments of officers were final and binding? Would the government, acting under the circumstances under which the camp was built, in the exercise of ordinary prudence, when about to expend millions of dollars, be likely to abide by decisions rendered (often of necessity quickly) by a single officer, who had but two days to examine any given monthly statement, or, in case of appeal, by another or even two other officers, without any reservation of the right of review? Having access to all of the defendant's papers, books, and instruments, if they were preserved, and having also knowledge of payments made for it at times other than when monthly statements were rendered (see the paragraph of article II following paragraph k, next to the last sentence of article IV, and the last paragraph of article V), the plaintiff would be in position to protect itself by verifying the cost of the entire work.

[13] The above-announced interpretation of the first portion of the article is strengthened by the remaining portion, which was manifestly inserted for the defendant's benefit. It accords defendant the priv-

ilege of examining the books, records, and papers of the contracting officer relating to the work for the purpose of checking up and verifying its cost. Undoubtedly that privilege conferred the right to examinations made as the work progressed, but there is no limitation in the language employed to that period only. The necessity for an examination on the part of defendant was not so great as on the part of the government, for the situation was such that the major part of the expense incurred was obviously at defendant's instance, for which it rendered statements, information concerning which would appear on its own books; but the defendant's accorded privilege of examination extended to all of plaintiff's books and records. It could not verify the cost of the work by a study of plaintiff's books and other instruments, except as it examined such as it had surrendered to plaintiff when monthly payments were made. Faulty as the body of the article is, its purpose was to confer a mutual right and reciprocal obligations. If the retention of the defendant's records was not for examination by and protection of the United States, the clause providing for their preservation is meaningless; but in the construction of the contract the various clauses should be harmonized, if possible, and the court should seek to avoid a construction which would nullify or render inconsistent one clause or provision with another. Guaranty Trust Co. of New York v. Mexican Petroleum Co. (D. C) 245 Fed. 901, 903. If two years were granted the government to inspect and audit, it must be assumed and in fairness held the defendant enjoyed a corresponding privilege for the same period. If either party had the right to verify cost, then the decisions and payments made by plaintiff's officer or officers were not conclusive, although they may have been so as to the amount which defendant, as respectively determined at the time, was entitled to receive as monthly payments, providing they were just and not tainted by anything which constituted a breach of contract. If they were not final and binding on one party, they could not be so on the other. By the terms of the contract, every payment made by the contracting officer was subject to revision. That article V, with its limitations on the finality of payments, should immediately follow article IV, is noteworthy.

[14] As further reflecting on the question under consideration is the concluding sentence of article XII, which, had clarity been kept in view would doubtless have been located in some more appropriate place in the written agreement. It cannot, however, be read out of the contract, or treated as surplusage, or restricted to the preceding provisions of the article which relate to assignments, transfers, and subletting without the contracting officer's consent. The preceding portions of the article expressly conferred on the plaintiff's officer the right to refuse to carry out the contract with either the transferor (defendant) or transferee, in case of a transfer without his consent; i. e., it gave the officer the right to annul the contract, if he elected to do so. His action in so doing would bring into operation the provisions of article VII prescribing the course of procedure in case of the termination of the contract. If cancellation resulted in damage to the government, it could by resorting to well-known legal methods, on adequate proof,

recover the loss sustained. The reservation of rights of action to the
United States was unnecessary, if the draftsman had in view only
breaches due to assignments, transfers, and sublettings. The language,
"All rights of action for any breach of this contract by the contractor
are reserved to the United States," is explicit, strong, and comprehen-
sive, and must be given its full force. The parties did not adopt the
language of the closing portion of section 3737, R. S. U. S. (section
6890, Comp. St.), or its equivalent, or amplify such language, but de-
liberately departed therefrom, and selected language broadly pre-
serving the government's right to sue for any breach of this contract.
The sentence quoted does not consist with the contention that monthly
payments were of a conclusive and final character. The right of ac-
tion was to extend, not to a particular class of breaches, but to breaches
of whatever kind. The provision is highly beneficial to the government
and such as a prudent person, situated as the government was under
the then existing circumstances, would exact for his protection. In
this connection, attention is directed to articles VIII and IX, specify-
ing the mode of procedure in case of the termination of the contract
and the abandonment of work thereunder respectively. In each is de-
tailed the course of procedure in settlement with the defendant. Each
of the articles closes with the statement:

"When the contracting officer shall have performed the duties incumbent
upon him under the provisions of this article, the contracting officer shall
thereafter be entirely released and discharged of and from any and all
demands, actions or claims of any kind on the part of the contractor hereun-
der or on account hereof."

All right of action is withheld from the defendant. No such denial
runs against the United States. The quoted provision emphasizes the
theory that the government's retention of all rights of action for any
breach of the contract was deemed of importance and preserved. An
additional reason is thus found for the requirement in article V that
defendant shall preserve its books, records, and papers for a period of
two years.

Other provisions to be considered in arriving at a conclusion on the
question under discussion are found in the last paragraph of article I
and the first two paragraphs of article II. The contracting officer was
to inspect, accept (purchase), and reimburse defendant for all ma-
chinery, equipment, hand tools not owned by workmen, supplies, ma-
terials, and completed and uncompleted work, the title to all of which
should become vested in the United States; but such vesting of title
was not to "operate to relieve the contractor from any duties imposed
hereby or by the contracting officer." In other words, acceptance and
payment by the officer were not necessarily to end the matter or pro-
duce a condition of finality. The officer was authorized to accept and
pay, and the defendant was entitled to sue, for only net expenditures
for such labor and for the items mentioned in such articles as were
necessary for temporary or permanent use, and, notwithstanding such
payment and the vesting of title in the United States, the defendant's
duties and responsibilities remained the same as before. The officer
was empowered to make still other reimbursements, but such other pay-

ments were restricted to actual net expenditures for items specifically included in paragraphs b, c, d, e, f, g, h, i, j, and k of article II— being the items (other than paragraph a) for which reimbursement for actual net expenditures was to be made under article II. The limitation of the right to payment to such matters only as were necessary is declared expressly in paragraphs a, b, g, i, and j, and by implication in other paragraphs, as well as in other articles. The defendant had no legal right to furnish or demand or receive payment for anything that was not necessary. In law, it was, moreover, bound to act in good faith in the performance of its contract in order to conserve the interests of the United States, and, that no question be left open as to its duty in that respect, paragraph h of article VI, couched as it is in vigorous language, was incorporated in the contract—unnecessarily so, I think, unless the purpose was to emphasize a familiar rule. And so by the terms of articles VII and VIII, only defendant's good-faith obligations, commitments, and unliquidated claims were to be assumed by plaintiff in case of the termination or abandonment of the contract. If, therefore, the contracting officer, through undue influence of the defendant, its negligence, trickery, or deceit, its connivance with him, mutual mistake, his incompetency, inattention, or negligence, accepted and paid for any labor, or completed or partially completed work, or any item or items of machinery, equipment, hand tools, supplies, or materials, such acceptance, payment, and vesting of title in the United States in no wise relieved the defendant of any of its responsibility or duties. The contracting officer's decisions and payments were not to constitute conclusive evidence of the fulfillment of the contract or of absence of its breach. The provisions under consideration are to be construed as a safeguard against nonperformance. The finality of his decisions and payments was dependent on their inherent accuracy and justness, and, to test whether they were of that character or not, they are liable to be met by any competent proof which may disclose their error or mistake, if any such exist. The contemplated expenditure was so great it was advisable and doubtless necessary that monthly payments should be made to the defendant, to enable it to meet its obligations and perform; but, in view of the provision that the defendant's duties and responsibilities remained the same, the right to revise his determinations was reserved—their finality being conditioned as above stated. Reading and construing each provision of the contract with reference to all of the other provisions having any relation to it, as the law requires must be done (Westinghouse E. & Mfg. Co. v. Binghampton Ry. Co. [D. C.] 255 Fed. 378, 399, and see, also, article XIV), and giving effect to every part of it in so far as that is possible, as is required (Interstate Iron & Steel Co. v. N. W. Bridge & Iron Co., 278 Fed. 50, 54 [C. C. A. 7]), it must be held that the rule applied in Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572, and kindred cases, is applicable.

[15] If the payments made under article IV are conclusive, precluding all other decision on the same subject-matter, unless fraud or bad faith be shown, the United States, although enabled to choose its

own Judge, became bound by his awards, regardless of his honesty, competency, attentiveness, or mistakes. The conclusiveness of his actions must appear from clear and express language, because it involves a contracting away of the right to appeal to the courts. Central Trust Co. v. Louisville, St. L. & T. Ry. Co. (C. C.) 70 Fed. 282, 285. To make the officer's decisions and payments final and binding, as claimed by defendant, requires plain language in the contract. It cannot arise from implication (Mercantile Trust Co. v. Hensey, 205 U. S. 278, 309, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572; U. S. v. Hurley, 182 Fed. 776, 778, 779, 105 C. C. A. 208 [C. C. A. 8]), or from isolated passages which are restricted in their meaning by others.

[16] If my interpretation of the contract is correct, the necessity of voiding by a suit in equity the awards made by the contracting officer does not exist. The principal and serious offense alleged is fraud in obtaining overpayments aggregating $5,000,000 for items at an excessive value or for which no charge whatever should have been made. The plaintiff has not seen fit to set forth what the aggregate of the payments to defendant was, nor has it indicated what it thinks the honest value of constructing the camp should have been. This failure may not be consequential. If the sum paid defendant is sufficiently in excess of what it should have fairly been to warrant the inference of fraud, the plaintiff, on adequate proof, is entitled to relief. Hume v. U. S., 132 U. S. 406, 10 Sup. Ct. 134, 33 L. Ed. 393; Beard v. U. S., 3 Ct. Cl. 122; Bassick v. Ætna Explosives Co. (D. C.) 246 Fed. 974; Nevada Nickel Syndicate v. National Nickel Co. (C. C.) 96 Fed. 133, 153, et seq.; Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572; Bulow v. Goddard, 1 Nott & McC. 45, 54, 9 Am. Dec. 663, 669.

[17, 18] The plaintiff claims this action is in tort, and that it may, therefore, on general averments of injury sue for the recovery of a lump sum without filing a bill of particulars or making its pleading more definite and certain. The defendant contends the case is ex contractu and by motion assails the petition on the ground of uncertainty and indefiniteness. If the attack made is meritorious, whether the case be in tort or contract, the determination of its real character becomes unimportant. The question may be decided by a consideration of the office of a bill of particulars, on the one hand, and of a motion to make definite and certain, on the other—having due regard to the Ohio practice. In states in which the use of bills of particulars still obtains, the federal courts have jurisdiction to order such a bill to be filed when necessary to clarify the issues, whether the action is founded on contract or in tort, and it is even said regardless of state statutory provisions. Green v. Delaware, L. & W. R. Co. (D. C.) 211 Fed. 774, 775; Buckeye Powder Co. v. Powder Co. (D. C.) 196 Fed. 514, 522; Wilson v. New England Nav. Co. (D. C.) 197 Fed. 88, 94. That a bill of particulars may be properly required in tort actions, see 31 Cyc. 567, 578; 3 Ency. Pl. & Pr. 550; 4 Standard Ency. Proc. 383, 384; 2 Am. & Eng. Ency. Law (1st Ed.) 245, 246; The Clipper v. Logan, 18 Ohio, 375; Tilton v. Beecher, 59 N. Y. 176, 183, 17 Am. Rep. 337. There are reputable authorities which hold that one of the objects of

a bill of particulars is to make the pleadings definite and certain and that the filing of such bill may be ordered when those qualities are wanting. Blount v. Rick, 107 Ind. 238, 240, 5 N. E. 898, 8 N. E. 108; Shaw v. Stone, 124 App. Div. 624, 625, 626, 109 N. Y. Supp. 146. In the last-named case it was said:

"The object of pleadings is to present clear and definite issues. The object of a bill of particulars is to further limit and define such issues. It is the defendant's right to be advised before the trial as to what it shall be called upon to meet upon the trial, and the avowed helplessness of the plaintiff to now formulate his demand is the very reason why the defendant should not be compelled to go into court until the plaintiff can state his claim."

If the purpose of a bill of particulars should not be that stated in the last two cited cases, the fact remains that under the Ohio Code bills of particulars are recognized only in cases originating in courts of justices of the peace, and then they take the place of pleadings in the higher courts (Swan's Treatise [21st Ed.] 32); i. e., they are employed in justices' courts instead of a petition or answer, as the case may be. They are unknown in cases like that here considered and have no place in the higher courts. If a case is taken from the court of a justice of the peace to the court of common pleas, the plaintiff must file a petition which must conform to the statutory requirements. Motions for bills of particulars are supplanted in Ohio by motions to make definite and certain, and, if a pleading in Ohio is to be assailed for uncertainty or indefiniteness, it must be by a motion of the character mentioned. Section 11336, Ohio General Code; Trustees v. Odlin, 8 Ohio St. 293, 296; Railway Co. v. Iron Co., 46 Ohio St. 44, 18 N. E. 486. Note, also, Goodheart v. Powers, 1 Handy, 559. The reason, therefore, for granting a bill of particulars warrants in this state the sustaining of an order to make a pleading definite and certain; and, if in other states a petition that is so general as to afford an opportunity for surprise when the proof is taken must be supplemented by a bill of particulars to secure the requisite certainty (Singers-Bigger v. Young, 166 Fed. 82, 84, 91 C. C. A. 510 [C. C. A. 8]) and to enable the defendant to meet and contradict or explain the charges, if possible, at the trial (Patterson v. Corn Exchange of Buffalo [D. C.] 197 Fed. 686, 687), it follows that in Ohio a petition of that character, whether the action be on contract or in tort, is vulnerable to a motion to make definite and certain.

Whatever may be the nature of the action, when the case goes to trial the plaintiff will be compelled to prove in some way by competent evidence how and wherein it was wronged of sums of money. To prevent surprise of the defendant as to what it will be called upon to meet with its proofs, it is entitled to such reasonable particularizing as will indicate upon what matters evidence is to be given. The first motion to make definite and certain, marked "(a)," is sustained excepting as to the claim for redundancy. To make clear the ruling, beginning on page 10 of the printed petition and ending on page 15, are set forth a series of charges separated by semicolons. The first of such charges pertains to the waste of materials. There is no averment made as to what materials or what quantity of the same were wasted, or the

amount paid on account of the same; nor is there any method suggested in the pleading whereby it can be seen what plaintiff will claim on account of that charge. The next averment goes to the purchasing and reselling at a profit of materials and equipment needed and unneeded. The plaintiff should particularize as to this and as to each succeeding item in paragraph 12, in so far as it reasonably can do so. Attached to defendant's brief is the order made by Judge Trieber in a case similar to this. I am content with the order he made and the petition should be made to conform to that order as nearly as is reasonably practicable as regards definiteness and certainty.

[19-22] If the facts to be alleged are peculiarly known or presumed to be known to the opposite party, then less certainty and particularity are required than in ordinary cases. 6 Ency. Pl. & Pr. 267, 271. Nor is plaintiff held to definiteness and certainty as to those matters which from their inherent nature are not capable of exactitude. It is not intended to lay down a hard and fast rule, but the requirement as to certainty and definiteness should be sufficiently observed. If plaintiff is not in a position adequately to particularize to conform to the rules of good pleading, possibly it may avail itself of a bill of discovery and thereby obtain or increase needed information. The petition, having charged fraud, should show with reasonable certainty of what the fraud consists, how it escaped detection by the contracting officer in charge, and why it was not detected at the time of its perpetration or for so long a time thereafter. In paragraph 12, p. 13, of the printed petition, is the charge of subletting portions of the work to various subcontractors; but there is no statement that the plaintiff did not consent thereto or that it was ignorant of the same. This should be corrected. In paragraph 13, p. 15, following the semicolon, is a charge of fraud as to concealment. If that is to be made a separate and distinct charge from the averments contained in paragraph 12, it should be followed by some appropriate averment as to the respect in which plaintiff was injured thereby. If it is not intended to be an additional charge, it should be eliminated. In paragraph 3 of the petition, page 3, is an averment about the patriotism of the persons and concerns intrusted with the performance of emergency work. An averment of that character, and as to loyalty, should be omitted. There is nothing in the contract which indicates that patriotism was any part of the consideration. The defendant entered into the contract and constructed the encampment on account of the compensation it was to receive. Paragraph 3 should either go out or be redrafted. In paragraph 12 the expression relating to a trust and all other averments as to a trust, and the allegation as to the sickness and death of soldiers, are superfluous and have no place in the pleading. All motions to strike out and to make definite and certain are overruled excepting in so far as they are sustained by the views expressed in this opinion.

An order may be taken conforming to the foregoing.