## BEUTTAS et al. v. UNITED STATES.
### No. 47866.

Court of Claims.

June 1, 1948.

P. J. J. Nicolaides, of Washington, D. C. (William F. Kelly, of Washington, D. C., on the brief), for plaintiff.

Francis X. Daly, of Boston, Mass., and Herbert A. Bergson, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

934

HOWELL, Judge.

Plaintiffs seek to recover additional costs caused by working their employees forty-eight hours a week which they allege they incurred in the performance of a contract to build a war housing project for the Federal Public Housing Authority. The Government has demurred to the petition.

Plaintiffs allege that on March 30, 1943, the defendant by its authorized agent, Hugo C. Schwartz, Acting Director of the Federal Public Housing Authority, entered into a written contract with the plaintiffs for the construction and completion of the war housing project at Fairfield, Ohio, for the stated contract price of $709,000, comprising $379,000 for materials and $330,000 for labor. Plaintiffs allege that they fully and completely performed, in accordance with the provisions of the contract and specifications and the schedules and drawings which formed a part thereof, all the work required to be done thereunder, which was duly accepted by the defendant; that they therefore become entitled to the full payment of the compensation fixed in the contract, in addition to the further amount set forth in their petition.

Before the contract was signed, the President of the United States on February 9, 1943, issued Executive Order 9301, 29 U.S.C.A. § 207 note, declaring that for the duration of the war, manpower would not be considered effectively utilized if the minimum workweek was less than forty-eight hours per week. This order directed the departments and agencies of the Federal Government to require their contractors to comply with such minimum workweek and with policies, directives, and regulations prescribed thereunder. The order further gave the Chairman of the War Manpower Commission power to take action in regulating the minimum workweek.

As alleged in the plaintiffs' petition, paragraph 13 of the instructions to bidders provided as follows:

"The attention of the contractor is directed to Maximum Price Regulation 251, dated October 30, 1942, (7 Fed.Reg. 8878), Public 729 of the 77th Congress, Executive Order 9017 dated January 12, 1942 [50 U.

S.C.A.Appendix, § 1507 note] (7 Fed.Reg. 238), Executive Order 9250 dated October 3, 1942 [50 U.S.C.A.Appendix, § 901 note] (7 Fed.Reg. 7871), and Rules and Regulations of the National War Labor Board; and Executive Order 9301 (8 Fed.Reg. 1825) and to the regulations and directives, if any, issued under such Executive Order by the War Manpower Commission or the Chairman thereof."

Article 22 of the contract provided in part as follows:

"(1) Delete from Section 13 ("Recent Laws and Regulations") of the Instructions to Bidders, page IB–6 of the Specification, the following words which begin on the sixth line of said Section following the word "Board;" and Executive Order 9301 (8th Fed.Reg. 1825) and to the regulations and directives, if any, issued under such Executive Order by the War Manpower Commission or the Chairman thereof."

Paragraph (d) of Article 11 of the form of contract on page C–8 of the invitation for bidders provided as follows:

"(d) Employees of the contractor not subject to the provisions of paragraphs (a), (b), (c) above, including clerks, timekeepers, superintendents, and other clerical and supervisory employees, shall be subject to Executive Order 9240 as amended [40 U.S.C.A. § 326 note], Regulations Relating to Overtime Wage Compensation, and to orders and rulings issued thereunder. The contractor's attention is directed to the fact that laborers and mechanics are exempted from the requirments of the above regulations by an order of the Secretary of Labor dated September 30, 1942, pursuant to Executive Order 9248 [40 U.S.C.A. § 326 note]. This contract is subject to Executive Order 9301, Establishing a Minimum Wartime Workweek of Forty-Eight Hours, and to the regulations and directives, if any, issued under such Executive Order by the War Manpower Commission or the Chairman thereof."

Article 22 of the contract further provided as follows:

"(2) Delete from Article 11 ('Eight-Hour Law—Overtime Compensation—Convict Labor') page C—8 of the Form of Contract of the Specification, the last sen-

tence of paragraph 'd' of said Article, which is as follows: 'This contract is subject to Executive Order 9301, Establishing a Minimum Wartime Workweek of Forty-Eight Hours, and to the regulations and directives, if any, issued under such Executive Order by the War Manpower Commission or the Chairman thereof.'"

Paragraph b of Article 11 of the contract provided as follows:

"(b) When a single shift is employed, work in excess of eight hours per day shall be permitted upon compensation at one and one-half times the basic rate of pay for all hours worked in excess of eight hours on any one day or at any time during the interval from 5 p. m. Friday to 7 a. m. Monday, or on legal holidays. When two or more shifts are employed, work in excess of seven and one-half hours per day shall be permitted upon compensation at one and one-half times the basic rate of pay for all hours worked in excess of seven and one-half hours on any day or at any time during the interval from Friday midnight to Sunday midnight."

The contract was signed by the defendant by its duly authorized agent, Hugo C. Schwartz, Acting Director of the Federal Public Housing Authority, and was dated March 30, 1943, and the work has been completed and accepted by the defendant.

The plaintiffs in preparing their bids for the performance of the contracts planned to work a forty hour week and did not make any allowance in their bids for the performance of any work during the interval from five p. m. Friday to seven a. m. Monday or on legal holidays, and made no provision in their bids for paying overtime pay.

On May 12th, 1943, the plaintiffs were notified by the Federal Public Housing Authority that their contracts came under the Executive Order 9301 (issued February 9, 1943) establishing a minimum forty-eight hour week and that they would have to comply therewith, to which notification the plaintiffs informed the Federal Public Housing Authority they would comply and keep a careful record of additional hours and that they would expect to be reimbursed for their additional costs.

The plaintiffs did keep a record of their increased costs alleged as a result of their complying with these instructions in establishing a minimum forty-eight hour week, in the amount of $22,153.80.

Plaintiffs further allege that on January 17, 1944, they submitted their claim in the amount of $22,153.80 to the Federal Public Housing Authority, which was denied on May 27, 1944, by letter from Carleton F. Sharpe, Director, Federal Public Housing Authority.

Subsequent requests were made to the various government agencies until finally said request was refused on November 6, 1944, by letter from Philip M. Klutznick, Commissioner of the Federal Public Housing Authority.

As we said before, the Government has demurred to the plaintiffs' petition and in its present grounds therefor urges that Executive Order 9301 was a general act by the Government in its sovereign capacity, for which the United States is not liable in its contractual capacity, and cites in support thereof various decisions of this and other courts, including Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736 (affirming 58 Ct.Cl. 189); The Clemmer Construction Co., Inc., v. United States, 71 F.Supp. 917, 108 Ct.Cl. 718; Barbour & Sons v. United States, 63 F.Supp. 349, 104 Ct.Cl. 360; Standard Accident Ins. Co., et al. v. United States, 59 F.Supp. 407, 103 Ct.Cl. 607, 326 U.S. 729, 66 S.Ct. 37, 90 L.Ed. 434, certiorari denied; Gothwaite v. United States, 102 Ct. Cl. 400; Jones v. United States, 1 Ct.Cl. 383, and Deming v. United States, 1 Ct.Cl. 190.

The defendant also argues that compliance with Executive Order 9301 with the expectation of being reimbursed for additional costs does not establish a case against the Government, nor does the fact that the performance of the contract by the plaintiffs was more costly than was anticipated constitute a sufficient basis for action against the Government.

Defendant further urges that the fact that prior to execution of the contract there was deleted from the Instructions to Bidders and from the form of contract the

reference to Executive Order 9301, does not vest the plaintiffs with any right against the Government for payment of additional costs caused by compliance with this order; and finally, that the plaintiffs' contract was subordinated to the power of the sovereign without the necessity for a stipulation to that effect.

We think that plaintiff has quite aptly pointed out that the various cases following the doctrine of law set forth in Horowitz v. United States, supra, are all cases holding that where a contract is entered into and thereafter the Government in its sovereign capacity does something which increases the contractor's cost, it is not liable therefor in its contractual capacity. In those cases it is to be noted that the contracts were entered into before the act complained of went into effect. In this case we do not have such a situation as the contract was entered into after Executive Order 9301 had been issued. It might very well be argued that the contract was subject to such Order, but the final formal contract signed by the government's contracting officer expressly deleted therefrom any requirements for compliance with said Order.

Another distinguishing feature between the present case and the cases upholding the Horowitz doctrine is that in all of those cases the contracting officer had nothing whatsoever to do with the act complained of, while in the present case it was the very department of the Government that entered into the contracts with plaintiffs that directed the plaintiffs to work forty-eight hours per week rather than forty hours.

It is insisted by the plaintiff that in preparing their bids on a forty hour per week basis they had a perfect right to do so, in view of the terms of the contract; further, that the contracts here in question contemplated a five-day, forty-hour week, since they required that time and one-half be paid workmen for all time worked in excess of eight hours in any one day, Monday through Friday, and for all time worked on Saturdays or Sundays.

■ In reply to defendant's argument that there must be an element of causation between the additional cost and some act of the defendant in its contractual capacity, it is pointed out that the contracting officer notified plaintiffs they would have to work a forty-eight hour week instead of a forty hour week, notwithstanding the fact that the contract stated they were not subject to said Executive Order, which clearly establishes the element of causation on the part of the government.

■ We are not impressed with the defendant's argument that striking a provision of a contract before execution has only a negativing effect and that the stricken provision cannot be used in the construction of the contract, in the light of the various authorities cited in support thereof, and especially in view of the fact that this contract on its face shows beyond any question that it was not subject to Executive Order 9301. The cases dealing with erased or stricken clauses of a contract do not seem to be in point for the reason stated above.

■ It is argued that individuals as well as courts must take notice of the extent of the authority conferred by law upon a person acting in an official capacity and cites Whiteside et al. v. United States, 93 U.S. 247, 256, 23 L.Ed. 882, and Ferris v. United States, 28 C.Cls. 332, 343. In both cases the court recognizes that the United States can be bound by the act of an official held out by the government as having authority to act for it, and in the latter case sets out what appears to be the general rule in such matters:

"In applying the law of agency to the transactions of the Government, it has not been the purpose of the Supreme Court, nor of this, to shackle or curtail the lawful and reasonable powers of the executive. Both courts have sought with great unanimity of decision to uphold the necessary discretion of the heads of the executive departments, and other responsible officers of the Government, but at the same time so to apply the law that subordinate and irresponsible agents should not bring upon the Government an unauthorized indebtedness through the medium of implied contracts."

■ The point has been made by the Government that the petition does not disclose who deleted the provision of the contract herein involved. On the other hand, the plaintiff insists that such deletion can

be charged directly to Hugo C. Schwartz, Acting Director of the Federal Public Housing Authority, who executed the contract. It does appear from all the allegations that the contract was so executed, that it has been completed and we cannot find wherein any question has been raised by anyone that he was not the duly authorized contracting officer to execute the contract on behalf of the Government. The defendant also says that the petition does not disclose what was intended to be accomplished by the deletion, in answer to which the plaintiff argues that Article 22 of the contract in express words deleted from Article 11 of the contract the words which made said contract subject to Executive Order 9301. Plaintiff further insists that the intention is perfectly clear and that no honest person could read the contract and have any doubt whatsoever that the intention was that the contract was not subject to Executive Order 9301; therefore that there could not be any doubt in the minds of the contracting parties as to the intention.

In arguing that the plaintiffs' contract was subordinate to the power of the sovereign without necessity for stipulation to that effect, the defendant cites the case, Home Building and Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 239, 78 L. Ed. 413, 88 A.L.R. 1481, and other cases holding that:

"Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."

The case before us, however, is one in which the contract is not silent as to existing laws and sovereign powers, but one which in its express terms says it is not subject to a certain executive order.

The plaintiff urges that since this case is before the court upon the defendant's demurrer that in a consideration thereof all doubts should be resolved in favor of the plaintiffs, especially in view of the fact that the contract was prepared by the defendant. Garrison v. United States, 7 Wall. 688, 690, 19 L.Ed. 277, United States v. A. Bently & Sons Co., D.C. 293 F. 229, and Callahan Const. Co. v. United States, 91 Ct.Cl. 538, 611.

In view of the various decisions of this court and the Supreme Court involving this same Executive Order and its application, and the arguments advanced by both parties in this case, we do not feel that it should be decided upon demurrer. Any doubts bearing upon the intentions of the parties, or the authority of the individuals who executed the contract, should be cleared away insofar as possible by evidence before a just decision can be rendered.

The defendant's demurrer is overruled. It is so ordered.